**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Raul GONZALEZ, Defendant–Appellee.**

No. 92–4357.

United States Court of Appeals, Eleventh Circuit.

Sept. 21, 1993.

Karen Rochlin, Linda Collins Hertz, Harriett R. Galvin, Asst. U.S. Attys., Miami, FL, for plaintiff-appellant.

Roy Kahn, Miami, FL, for defendant-appellee.

Before EDMONDSON and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

In this appeal, the United States challenges the district court's interpretation of section 2X3.1 of the United States Sentencing Guidelines (U.S.S.G.). For the reasons that follow, we find that the district court erred in its application of the Guidelines and we remand for resentencing.

## I. Background

In late 1987, Jose Miguel Ortega–Acosta was arrested on narcotics charges involving more than twenty kilograms of cocaine. Ortega–Acosta was released on bail, posted a bail bond, but failed to appear in court. The court issued a bench warrant for Ortega–Acosta's arrest for failure to appear.

In September, 1990, United States Marshals finally located Ortega–Acosta hiding at the home of his brother-in-law, Appellee Raul Gonzalez. Ortega–Acosta was arrested and Gonzalez and two other occupants of the house were charged with concealing Ortega–Acosta from arrest in violation of 18 U.S.C. § 1071. Gonzalez subsequently pled guilty to the charge. In exchange, the government dropped the charges against his two co-defendants.

In its sentencing report, the United States Probation Office undertook to calculate Gonzalez' offense level under section 2X3.1 of the Sentencing Guidelines. Section 2X3.1, entitled Accessory After the Fact, treats one who harbors a fugitive as an accessory to the fugitive's offenses. It is the only section of the Sentencing Guidelines which addresses the offense of harboring and provides the following formula:

*Accessory After the Fact*

(a) Base Offense Level: 6 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 30. *Provided,* that where the conduct is limited to harboring a fugitive, the offense level shall not be more than level 20.

United States Sentencing Commission, *Guidelines Manual,* § 2X3.1 (Nov.1992).

The Probation Office used Ortega–Acosta's failure to appear as the underlying offense in its calculation of Gonzalez' offense level.

With reference to U.S.S.G. § 2J1.6, Failure to Appear, the Probation Office recommended an offense level of seven.[1] The government objected, contending that Ortega–Acosta's narcotics offense should serve as the underlying offense of Gonzalez' harboring.[2] The district court adopted the interpretation suggested by the Probation Office and sentenced Appellee to seven months' imprisonment, two years of supervised release, and a $2500 fine. The government filed this appeal.

## II. Discussion

■ We review *de novo* the district court's interpretation of the Sentencing Guidelines. *United States v. Odedina,* 980 F.2d 705, 707 (11th Cir.1993); *United States v. Goolsby,* 908 F.2d 861, 863 (11th Cir.1990).

■ Whether Ortega–Acosta's drug offense or his failure to appear should serve as the underlying offense of Gonzalez' sentence for harboring appears to raise a question of first impression. The application notes to the accessory guideline provide only that " 'underlying offense' means the offense as to which the defendant is convicted of being an accessory." U.S.S.G. § 2X3.1, comment. (n. 1). Section 2X3.1 provides no indication as to which of two anterior offenses should govern the sentence where the principal offender jumps bond. We therefore look to the language and purpose of the Sentencing Guidelines for instruction.

The term "underlying offense" appears in a separate context in the guideline for failure to appear, § 2J1.6, where it relates to a schedule of enhancements based upon the severity of the offense underlying the failure to appear. § 2J1.6(b)(2). In this section, underlying offense is defined as "the offense in respect to which the defendant failed to appear," U.S.S.G. § 2J1.6, comment. (n. 1). Thus, for example, Ortega–Acosta's drug offense is the underlying offense of his failure to appear for purposes of § 2J1.6. Similarly, had Gonzalez harbored Ortega–Acosta prior to Ortega–Acosta's initial arrest, the narcotics offense would clearly be the underlying offense of Gonzalez' sentence under § 2X3.1 because it would have been the only offense in existence at the time.

We face the question whether, when Ortega–Acosta submitted to arrest and then jumped bond, this second offense superseded the first and became the offense underlying Gonzalez' harboring. We conclude that it did not. The common meaning of the term "underlying": implicit, fundamental, anterior or prior in claim, *see* Webster's Third New International Dictionary 2489 (1971), supports the notion that the first link in the chain of events in this case, the narcotics offense, is the underlying offense of both Ortega–Acosta's failure to appear and Gonzalez' harboring.

Gonzalez counters that the failure to appear guideline takes into account Ortega–Acosta's initial offense through a schedule of enhancements for specific offense conduct. This being so, he argues, the harborer's punishment increases with the severity of the crime initially committed by the fugitive and § 2J1.6 is the Sentencing Commission's comprehensive approach to cases in which an individual harbors a defendant who has failed to appear. This reasoning, while somewhat persuasive, is countered by a general instruction in the Guidelines that "where two ·or

---

1. The Probation Office applied § 2J1.6, which sets a base offense level of six for a failure to appear if the fugitive failed to appear for a proceeding other than service of sentence. This level was enhanced nine levels as Ortega–Acosta's underlying narcotics offense was punishable by a term of imprisonment of fifteen years or more. U.S.S.G. § 2J1.6(b)(2)(A). The offense level applicable to Ortega–Acosta's failure to appear was thus fifteen. Section 2X3.1 provides that a harborer is sentenced by reducing this figure by six for an accessory role. The Probation Office calculated a downward departure of two additional levels for Gonzalez' acceptance of responsibility which left an offense level of seven.

At the time of sentencing, this offense level carried an imprisonment range of one to seven months. U.S.S.G. § 5A.

2. Gonzalez' offense level rises to eighteen under this alternative calculation. Section 2D1.1 is the guideline applicable to Ortega–Acosta's narcotics offense. Because it prescribes an offense level higher than twenty after a six-level reduction for an accessory, it is limited to twenty in this case by the cap provided in § 2X3.1. Reduced two additional levels for acceptance of responsibility, this approach gives Gonzalez an offense level of eighteen.

more guideline provisions appear equally applicable, but the guidelines authorize the application of only one such provision, use the provision that results in the greater offense level." U.S.S.G. § 1B1.1, comment. (n. 5). Use of Ortega–Acosta's drug conviction as the underlying offense rather than his failure to appear unquestionably results in a higher offense level for Gonzalez. See n. 1, 2, supra.

The interpretation used by the district court and endorsed by Appellee also creates a counterintuitive distinction in punishment between the defendant who harbors a criminal prior to an initial arrest and one who harbors a bond jumper. The bond jumper commits a second offense when he fails to appear for judicial proceedings and it is odd, indeed, to impose what is in this and will be in most cases a significantly lighter penalty on one who harbors the dual offender than on one who hides a suspect from initial arrest. Using the crime which prompted the fugitive's flight as the offense underlying the harboring in both cases eliminates this inexplicable distinction.[3]

■ Appellee responds to this reasoning by suggesting that, at the time of the second arrest, "Ortega–Acosta was not being sought by the authorities for having committed the offense of drug trafficking." Resp.Br. at 10. Appellee notes correctly that the arrest warrant for Ortega–Acosta's drug activity was no longer outstanding because he had been arrested on that charge. However, Ortega–Acosta was certainly fleeing from the prospect of punishment under that charge and the Marshals were clearly searching for him so that he would not evade punishment for that offense. We decline to adopt Appellee's formalistic contention or the apparent conclusion of the district court that, because Ortega–Acosta was arrested under a warrant covering his failure to appear, the failure to appear must govern the sentence of Gonzalez, who was indicted for harboring "a fugitive person for whose arrest a warrant had been issued ...". The phrasing of an indictment is not necessarily dispositive of sentencing issues. See United States v. Cross, 916 F.2d 622 (11th Cir.1990) (per curiam). We conclude that for purposes of sentencing under § 2X3.1, the narcotics offense which prompted Ortega–Acosta's flight should serve as the underlying offense of Gonzalez' conviction for harboring.[4]

Our conclusion is buttressed by three recent decisions of our sister circuits. In United States v. Stephens, 906 F.2d 251 (6th Cir.1990), the defendant, Herbert Stephens, was convicted of concealing his son from police attempting to serve a warrant charging the son with conspiracy to distribute cocaine and damaging a vehicle with explosives. Stephens pled guilty and was sentenced as an accessory to his son's narcotics offenses. In disposing of Stephens' subsequent contention that his guilty plea was not knowing because he was unaware of the quantity of cocaine involved in the conspiracy, the court noted that "Appellant's base offense level was ... tied directly to his son's offense level, which was in turn determined by the amount of cocaine with which his son was involved...." 906 F.2d at 252.

Appellee concedes that the drug charge was the proper underlying offense in Ste-

---

3. We recognize that in 1991 the Sentencing Commission proposed an amendment which would have incorporated Appellee's reading of "underlying offense" into the Guidelines. See 56 F.R. 1846 (proposed Jan. 17, 1991). The amendment actually adopted, however, merely added the level 20 cap to the accessory guideline. See U.S.S.G. § 2X3.1 and historical note. The selection of this amendment and rejection of the one favoring Appellee's view undercuts rather than supports his position.

4. In reaching this conclusion, we bear in mind that the purpose of the Sentencing Commission in drafting the Guidelines was to establish a uniform sentencing system which reproduced the calculations theretofore made by sentencing authorities. See U.S.S.G. Ch. 1, Pt. 5, intro. note

(emphasizing that creation of sentencing ranges in the Guidelines was based on examination of pre-Guidelines convictions, presentence reports, parole guidelines and policy judgments). We have no doubt that a judge considering the factors most relevant to Gonzalez' sentence prior to the enactment of the Guidelines would have taken into account Ortega–Acosta's narcotics offense and would not have limited consideration of that offense by weighing only how it enhanced the seriousness of Ortega–Acosta's failure to appear. We believe that our reading of § 2X3.1 therefore provides a truer reproduction of pre-Guidelines practice than does the district court's approach and thus better serves the purpose of the Sentencing Guidelines.

*phens* but argues that that case is distinguishable because the principal offender was a fugitive from initial arrest. Appellee urges that where, as here, the fugitive was arrested, jumped bond, and became the subject of a second arrest warrant, the second offense must define the sentence of one convicted of harboring the fugitive. We do not believe this factual distinction, namely the timing of the fugitive's flight, mandates the reading of the Guidelines urged upon us by Appellee or the counterintuitive sentencing structure which flows from it.

Our conclusion that the anterior offense remains the underlying offense in cases like the one *sub judice* comports with two recent unpublished decisions by the First and Sixth Circuits upholding the use of anterior offenses to calculate the sentences of accessories to later crimes. In *United States v. Cashin,* Nos. 91–2303, 91–2329, 1993 WL 106847, 1993 U.S.App. LEXIS 8428 (6th Cir. Apr. 9, 1993) (per curiam), the Sixth Circuit addressed challenges to the sentence of a defendant, Brian Cashin, who conspired with his brother Barry to tamper with witnesses in Barry's trial on drug charges. The court found that Barry's narcotics trafficking, and not his own involvement in the witness tampering conspiracy, was the "underlying offense ... pertinent to Brian's sentencing" under § 2X3.1. 1993 WL 106847, at * 11, 1993 U.S.App. LEXIS 8428, at * 31.

In *United States v. Sargent,* No. 91–1919, 1992 WL 182969, 1992 U.S.App. LEXIS 5654 (1st Cir. Jan. 24, 1992) (per curiam), the defendant, Albert Sargent, was convicted of assaulting a witness who was preparing to testify in the drug conspiracy trial of Edward Murley. The First Circuit upheld Sargent's sentence as an accessory under § 2X3.1 against a due process challenge, commenting that "the underlying offense to which Sargent acted as an 'accessory' was Murley's drug conspiracy." [5]

In the instant case, Gonzalez aided a fugitive whose primary goal was to escape not the comparatively light jeopardy of a failure to appear charge but the far greater jeopardy of a narcotics offense. Harboring this dual offender was at least as serious a crime

as harboring an individual not yet arrested. Ortega–Acosta not only committed an initial offense but was apparently desperate enough to forfeit his bond and devote himself to evading punishment for that offense. By providing Ortega–Acosta with shelter, Gonzalez became an accessory to Ortega–Acosta's flight from punishment for that narcotics offense. We therefore conclude that Ortega–Acosta's narcotics offense is the proper underlying offense of Appellee's sentence under section 2X3.1 of the Guidelines and find that the district court erred in its interpretation of the Guidelines. Appellee's sentence is VACATED and the case REMANDED for resentencing.

---

**5.** It is unclear from the case whether Murley was prosecuted for inducing Sargent to assault the witness but the court clearly noted that he had so induced the defendant.