[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 29, 2003
THOMAS  K. KAHN
CLERK

————————————————

No. 02-14239

————————————————

D. C. Docket No. 01-01004-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

FERRYS HARVEY MIRANDA,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

**(October 29, 2003)**

Before HULL, MARCUS and STAHL*, Circuit Judges.

PER CURIAM:

_____

*Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

After a trial, the government appeals Defendant Ferrys Harvey Miranda's 15-month sentence imposed for his conviction for using a computer to attempt to persuade a minor to engage in criminal sexual conduct, in violation of 18 U.S.C. § 2422(b). On appeal, the government argues that the district court erred: (1) in applying U.S.S.G. § 2A3.4 (Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact), instead of the harsher penalties provided in U.S.S.G. § 2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts); and (2) in failing to assess a two-level specific offense enhancement for Miranda's misrepresentation of his age under U.S.S.G. § 2A3.2(b)(2)(A)(i) or § 2A3.4(b)(4)(A).[1] After review and oral argument, we vacate Miranda's sentence and remand to the district court for resentencing.

## I. BACKGROUND

Because the appropriateness of Defendant Miranda's sentence depends on whether the district court applied the proper sentencing guideline, we first review the guidelines applicable to convictions under 18 U.S.C. § 2422(b). We then

---

[1]The 2000 edition of the United States Sentencing Guidelines was applied because Miranda committed the offense on October 30, 2001, two days before the effective date of the 2001 guidelines. See United States v. Diaz, 26 F.3d 1533, 1544 (11th Cir. 1994). All citations will be to the 2000 edition of the Sentencing Guidelines unless otherwise noted.

review the evidence presented at trial against Miranda and why we conclude that the district court should have sentenced Miranda for attempted sexual abuse under § 2A3.2, not attempted sexual contact under § 2A3.4.

A.    Guidelines Applicable to § 2422(b) Convictions

Miranda was convicted under 18 U.S.C. § 2422(b).  A person violates 18 U.S.C. § 2422(b) when, using the mail or other means of interstate commerce, he "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." 18 U.S.C. § 2422(b).

Appendix A of the United States Sentencing Commission Guidelines Manual instructs that the appropriate starting point for a conviction under 18 U.S.C. § 2422(b) is U.S.S.G. § 2G1.1 (Promoting Prostitution or Prohibited Sexual Conduct).  The commentary to § 2G1.1 provides, however, that cases that do not involve prostitution, like this case, are to be sentenced under one of four other guidelines: § 2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material); § 2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse); § 2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such

3

Acts); or § 2A3.4 (Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact). U.S.S.G. § 2G1.1, cmt. background.

Where a sentencing court is required to choose among multiple guideline sections, the court must "use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. app. A, introductory cmt. Both parties agree that neither § 2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material) nor § 2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse) is applicable in this case.[2] The issue thus becomes whether to apply § 2A3.2 (Attempted Sexual Abuse) or § 2A3.4 (Attempted Sexual Contact) of the Sentencing Guidelines.[3]

_____

[2]Section 2G2.1 is inapplicable because there is no evidence of explicit visual or printed material in this case. Section 2A3.1 is inapplicable because it requires the victim to have been threatened or placed in fear of death or other serious bodily injury.

[3]This Court has adopted a two-prong test for establishing the crime of attempt; that is, the government must establish that the defendant: (1) has the required intent or mens rea; and (2) took actions that constituted a "substantial step toward the commission of the crime." United States v. Root, 296 F.3d 1222, 1227-28 (11th Cir. 2002), cert. denied, 123 S. Ct. 1006 (2003). Specifically, this Court stated that

> [t]his circuit has long held that to convict a defendant of the crime of attempt, the government need only prove (1) the defendant was acting with the kind of culpability otherwise required for the commission of the crime for which he is charged with attempting; and (2) the defendant was engaged in conduct that constitutes a substantial step toward the commission of the crime.

Id. (internal quotation marks and citations omitted). The district court recognized that Miranda's intent was at issue, stating, "It really comes down to an issue of intent . . . . So the issue really for the Court is what is it Mr. Miranda really intended to do once he got to the . . . location . . .

B.     Attempted Sexual Abuse Versus Attempted Sexual Contact

Section 2A3.2 applies to offenses "involving the criminal <u>sexual abuse</u> of an individual who had not attained the age of 16 years."  U.S.S.G. § 2A3.2, cmt. background (emphasis added).  Section 2A3.2 refers to 18 U.S.C. § 2243(a) as the statutory provision covered.[4]  U.S.S.G. § 2A3.2, cmt.  Furthermore, § 2A3.2(c)(1) directs courts to 18 U.S.C. § 2241 or § 2242 in order to determine the definition of criminal sexual abuse or attempt to commit criminal sexual abuse.  U.S.S.G. § 2A3.1(c)(1).  According to 18 U.S.C. §§ 2241, 2242, and 2243, the term "sexual abuse" includes offenses that involve a "sexual act."  <u>See</u> 18 U.S.C. § 2241, <u>et seq</u>. In turn, the term "sexual act" is defined in 18 U.S.C. § 2246 as:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an

_____

where he encountered the undercover agent."

[4]According to Instructions for the Sentencing Guidelines, "[t]he list of 'Statutory Provisions' in the Commentary to each offense guideline does not necessarily include every statute covered by that guideline.  In addition, some statutes may be covered by more than one guideline."  U.S.S.G. § 1B1.1, cmt. n.3.

intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(2).  Therefore, if Miranda's conduct consisted of an attempted sexual act, as defined above, with either of his intended victims, § 2A3.2 would apply.

Section 2A3.4 applies to offenses constituting "sexual contact not amounting to criminal sexual abuse."  U.S.S.G. § 2A3.4, cmt. background (emphasis added).   Like § 2A3.2, section 2A3.4 refers to statutory provisions. Specifically, § 2A3.4 defines a defendant's base offense level by reference to 18 U.S.C. § 2241(a) or (b) or 18 U.S.C. § 2242.  The terms found in §§ 2241 and 2242 are defined in 18 U.S.C. § 2246.  Therefore, we look to § 2246 to determine what constitutes sexual contact. The term "sexual contact" is defined in § 2246 as

> the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(3).

As stated above, § 2A3.4 narrows "sexual contact" to "sexual contact not amounting to criminal sexual abuse," and thereby excludes any sexual conduct that constitutes a "sexual act."  U.S.S.G. § 2A3.4, cmt. background.  Therefore, if Miranda's conduct did not constitute an attempted sexual act with either of his

6

intended victims, but merely consisted of an attempted sexual contact, § 2A3.4 would apply.

Thus, the decision to sentence Miranda under §2A3.2 or § 2A3.4 rests on this determination: if Miranda's conduct consisted of an attempted "sexual act" with his intended victims, then the district court should have applied § 2A3.2. If, however, Miranda's conduct consisted of attempted "sexual conduct" with his intended victims, the district court correctly applied § 2A3.4. As the following evidence readily demonstrates, Miranda's conduct clearly consisted of an attempted sexual act with his intended victims, and, therefore, the district court should have applied § 2A3.2.

B.    Miranda's Chat Sessions

In October 2001, Detective Brad Rosh of the Miami-Dade School Board Police Department and Special Agent Kevin Levy of the United States Secret Service were assigned to the Secret Service Electronic Crimes of Violence Task Force. Detective Rosh and Special Agent Levy entered Internet chat rooms posing as minors and waited for contact from adult sexual predators.

On October 29, 2001, Detective Rosh, under the username "claudia13x," entered a Yahoo! Internet chat room. Claudia13x was a 12-year-old female from

Miami. Special Agent Levy entered the same chat room under the username "latinaprincezz13" – a 14-year-old female from Miami.

On October 29, 2001, while latinaprincezz13 and claudia13x were signed onto the chat room, Defendant Miranda signed on under the username "maleusafla," a 35-year-old male from Miami. Miranda quickly initiated a conversation with latinaprincezz13.

At first, Defendant Miranda stated that he would not have sex with latinaprincezz13 because she was too young. However, as the online conversation progressed, Miranda directly asked latinaprincezz13, "Do you want to have sex?," to which she responded "ok." The following conversation also occurred between Miranda and latinaprincezz13, wherein the two discussed having sex and Miranda asked if latinaprincezz13 was "prepare[d] to do those kinda things":

| | |
|---|---|
| Miranda: | Tell me what you have in mind about goig out with a guy. What do you want to do?[5] |
| latinaprincezz13: | not sure |
| latinaprincezz13: | never really went out with a guy b4 |
| Miranda: | Just tell me. |
| latinaprincezz13: | what would we normally do? |
| Miranda: | What you do? Where would you go? |
| latinaprincezz13: | anywhere i guess |
| latinaprincezz13: | just so bored of being alone at home |
| Miranda: | No be more specific. |

---

[5]The e-mails between Miranda and claudia13x and latinaprincezz13 contain numerous spelling mistakes. In this opinion, we recite the e-mails as written.

latinaprincezz13: give me choices and i will tell you
Miranda: Movie, mall, ????  I leave the question marks for you.
latinaprincezz13: i have been to the movies and the mall but what are the qwestion marks for tell me?
Miranda: That is for you to think.  What do you think a boy and girl alone would do?
latinaprincezz13: i don't know like what should they do
Miranda: Yo do not have any idea.  What do boy and girls alone do in a movie.
latinaprincezz13: u mean the actors or the people who go to the movies
Miranda: The actors.
latinaprincezz13: i saw pictures once but that was a while ago
Miranda: OK. you do not what to say it.
Miranda: Usualy in movies they have s.......x.
latinaprincezz13: sex
latinaprincezz13: i know
latinaprincezz13: never done that b4
Miranda: Are you prepare to do those kind of things.
latinaprincezz13: don't know if i would be good never done them before

. . .

latinaprincezz13: would it hurt a lot
Miranda: It depends if you are a virgin.
latinaprincezz13: i never had sex b4 so i guess im a virgin
latinaprincezz13: i know it may hurt a little but will it hurt a lot
Miranda: Do you have your menstruation period every month?
latinaprincezz13: yeah

. . .

Miranda: Do you know how to protect yourself from pregnancy.
latinaprincezz13: not really - how?
Miranda: Well you know there are pills.
latinaprincezz13: yeah i have heard

Furthermore, during his conversation with latinaprincezz13, Defendant

Miranda attempted to set up a meeting with her.  The two of them, however, could

not agree on a mutually convenient time.  Latinaprincezz13 promised to let

Miranda know where he could meet her and said that she would send him an email. Latinaprincezz13 never sent an email, and Miranda had no further contact with her.

Midway through the conversation with latinaprincezz13, Defendant Miranda simultaneously became involved in a conversation with claudia13x. Miranda asked for claudia13x's "ASL," which is Internet jargon for "Age, Sex, and Location." Claudia13x responded that she was a 12 year-old female from Miami. Miranda, in turn, stated that he was a 35 year-old male from Miami. After several minutes of conversation, Miranda asked claudia13x, "What do you think about sex?" Claudia13x responded that she had never had sex before but was "curious" about it and thought that it would be "cool."

After a few more minutes of conversation, Miranda stated, "I would like to have sex." Shortly thereafter, the following exchange about them having sex together occurred:

```
Miranda:     I want to ask you. Have you ever thought about protection
             against pregnancy?
claudia13x: I guess
Miranda:     Tell me what would you use?
claudia13x: I thought the guy uses tyhat
Miranda:     Well both. Guys use condom, girls can take the pill.
claudia13x: oh okay
Miranda:     Do you have your menstrual cycle on time.
claudia13x: yes
```

10

Miranda:      every first of the month?
claudia13x: like the 5th
Miranda:      and it is on time all the time.
claudia13x: for the most part
. . .
Miranda:      I would not like to see you pregnant at a very young age.
claudia13x: thank you
Miranda:      A beatiful girl like you has a lot of future in front of you.
claudia13x: thank you
Miranda:      I think I like you and hopefully we can be good friends and more (Sex of course).  With a beatiful blonde.
claudia13x: okay
Miranda:      Do you want to do that ?
claudia13x: i think that will be okay
Miranda:      OK, I just want to know I will be very gentle with you.
claudia13x: promise?
Miranda:      Yes, tell me how do you think it will be for you
claudia13x: I hope it does not hurt too much
Miranda:      If I am gentle with you it will not hurt.  I hope you will like it so you can enjoy it.
claudia13x: okay
Miranda:      I am getting very hot at just imagin been with you.
. . .
Miranda:      Tell me do you have breasts .
claudia13x: a little
. . .
Miranda:      how about pubic hair.
claudia13x: yes
Miranda:      where?
. . .
claudia13x: in my private
. . .
Miranda:      How do you want me to make love to you.
claudia13x: just be nice to me please
Miranda:      Just tell me.
claudia13x: gentle
Miranda:      how do you picture to have sex.

11

claudia13x: gentle
Miranda:    Do you know any position you would like to experiment.
claudia13x: i don't know
Miranda:    No idea, just give me some ideas.
claudia13x: but just be gentle with me

In addition to the above conversation, Defendant Miranda asked claudia13x to meet him. Miranda suggested that they meet "at a public place like Mc[D]onalds, etc."[6] Claudia13x responded that there were "too many people." They agreed to meet the following day at 6:30 p.m. in front of the Kenwood Elementary School. Miranda told claudia13x that he would be driving a champagne-colored Nissan 240SX. Miranda repeatedly stressed that their meeting had to be kept "secret" and that "this is between us, no one should know about this."

The next day, Defendant Miranda again chatted with claudia13x online. He asked claudia13x if she would be "available at 6:30," as they previously had agreed. She responded that she would be there. They agreed to meet at the Kenwood Elementary School playground. Claudia13x told Miranda that she

---

[6]The defense argues that the fact that Defendant Miranda suggested a public place indicated that he did not intend to have sex with claudia13x. However, once they agreed to meet at Kenwood Elementary School, Miranda asked claudia13x: (1) "How do you want me to make love to you;" (2) "how do you picture to have sex;" and (3) "Do you know any position you would like to experiment." In any event, the fact that Defendant Miranda may have suggested a public place to first meet claudia13x has no relevance with regard to what he intended to do after picking claudia13x up from the Kenwood Elementary School.

would be wearing jeans, a white shirt, and a black hat. Miranda again told

claudia13x that she would "have to keep [the meeting] as a secret."

Their online conversation also touched on what claudia13x referred to as

the "sex thing":

> Miranda:    When did you feel the need to explore sex
> claudia13x: not really sure
> . . .
> Miranda:    Are you nervous about our date
> Miranda:    Are you there ?
> claudia13x: nervous a little afraid it might hurt
> Miranda:    Why?
> Miranda:    It wont.
> claudia13x: don't want to get pregnunt
> Miranda:    No you won't.
> Miranda:    We will make sure you will not.
> claudia13x: how can u make sure
> Miranda:    We can use condom.
> claudia13x: ok
> Miranda:    I am leavin now see you at 6:30 p.m.

Miranda and claudia13x ended their conversation shortly before 6:00 p.m.

C.    Miranda's Arrest

That same day, at approximately 6:30 p.m., Special Agent Levy,

accompanied by other task force agents, arrived at the Kenwood Elementary

School. Special Agent Beth Mitchell, posing as claudia13x, sat on a wooden

railroad tie near the sidewalk adjacent to the school playground. After a few

13

minutes, the agents observed a champagne-colored Nissan 240SX driving slowly around the school.

The Nissan drove past Special Agent Mitchell, slowed to a stop, backed up, and then stopped approximately 5 feet from her. Miranda rolled down the window and asked Special Agent Mitchell the name of the school. At that point, Special Agent Mitchell stood up, and other agents surrounded Miranda and arrested him. When Miranda was searched, no condoms were found in his possession or in the car.[7]

After being advised of his constitutional rights, Defendant Miranda spoke to the arresting agents. He denied that he had come to the school to meet anyone; he stated that he had just left a bookstore in the vicinity of the school. When asked his age, Miranda told the agents that he was 35. After an agent reviewed Miranda's driver's license, the agent again asked Miranda how old he was, to which Miranda replied, "I'm 35–I mean 40."

---

[7]The defense asserts that the fact that no condom was found in Defendant Miranda's car constitutes some evidence of his intent not to have sex with claudia13x. Such an argument is meritless as Miranda never told claudia13x that he would bring a condom. Rather, Defendant Miranda stated that they could use a condom to prevent claudia13x from getting pregnant. We note that to the extent Miranda planned on using a condom, nothing would have prevented him from purchasing one after picking up claudia13x.

After Miranda's arrest, the agents went to his residence and seized his computer hard drive. An examination of the hard drive confirmed that Miranda previously had contacted latinaprincezz13 and claudia13x.

D.    Miranda's Sentencing

In the Presentence Investigation Report ("PSI"), the probation officer determined that U.S.S.G. § 2A3.2 (Attempted Sexual Abuse) was applicable because Miranda's conduct consisted of an attempted sexual act with his intended victims. The probation officer assessed Miranda a base level of 18, pursuant to § 2A3.2(a)(1) because the ages of the victims of the offense were less than 16 years old and because Miranda attempted to have sex with them. The probation officer also assessed Miranda a two-level specific offense enhancement, pursuant to U.S.S.G. § 2A3.2(b)(2)(A)(i), because he had misrepresented his age as 35 years old in an attempt to induce the victims to have sex with him.

Miranda objected to the PSI, contending that U.S.S.G. § 2A3.4 (Attempted Sexual Contact) instead of § 2A3.2 (Attempted Sexual Abuse) applied because he did not intend to have sex with either of his intended victims. Miranda further argued that his statement to claudia13x that his age was 35, instead of his actual age of 40, was immaterial because the 5-year difference did not entice the victim into acting.

15

At the sentencing hearing, the district court agreed with Miranda's objections and applied § 2A3.4 (Attempted Sexual Contact). The district court also rejected the government's argument that Miranda's misrepresentation of his age warranted a two-level enhancement. The district court sentenced Miranda to 15 months' imprisonment. The government now appeals Miranda's sentence.

## II. DISCUSSION

### A.    Standard of Review

This Court has well-established precedent regarding the standard of review in sentencing appeals. The district court's interpretation of the Guidelines is a question of law that this Court reviews de novo. United States v. Gonzalez, 2 F.3d 369, 371 (11th Cir. 1993) (citation omitted). "We use the same de novo standard to scrutinize a district court's choice of the appropriate sentencing guideline to apply to a given set of facts." United States v. Goldberg, 60 F.3d 1536, 1539 (11th Cir. 1995) (citing United States v. Shriver, 967 F.2d 572, 574 (11th Cir. 1992)). However, a district court's finding regarding a defendant's intent is reviewed for clear error. United States v. Vallejo, 297 F.3d 1154, 1162 (11th Cir. 2002) (reviewing for clear error a district court's findings regarding prosecutor's intent).[8]

---

[8]In United States v. Williams, 340 F.3d 1231, 1234-37 (11th Cir. 2003), this Court conducted an interesting survey of case law from the Eleventh Circuit and United States Supreme Court addressing the appropriate "due deference" under 18 U.S.C. § 3742(e) that courts are

16

B.      U.S.S.G. Sections 2A3.2 and 2A3.4

On appeal, the government argues that the district court erroneously determined Miranda's base offense level under U.S.S.G. § 2A3.4, the guideline for sexual contact. According to the government, the district court should have sentenced Miranda pursuant to the harsher penalties contained in § 2A3.2 because Miranda's conduct consisted of an attempt to have sex with latinaprincezz13 and claudia13x. The government emphasizes that there is no way to read the e-mail dialogue at issue in this case other than as an attempt by Defendant Miranda to have sex with individuals whom he believed to be two young girls. The government also stresses the fact that Defendant Miranda actually showed up at

---

obliged to give to a sentencing judge's "application of the guidelines to the facts." However, Williams involved only the question of how a court properly would group particular offenses for sentencing. Id. at 1243-45. Therefore, the Williams decision is necessarily limited to announcing the standard of review only for a challenge to the district court's grouping of a defendant's offenses. See United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision.") (internal quotation marks and citations omitted). Williams's remaining discussion is primarily dicta and, therefore, not binding on this Court. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 379, 114 S. Ct. 1673, 1676 (1994) ("It is to the holdings of our cases, rather than their dicta that we must attend . . . ."); Browning v. AT&T Paradyne, 120 F.3d 222, 225 n.7 (11th Cir. 1997) ("Since this statement was not part of any holding in the case, it is dicta, and we are not bound by it.") (citations omitted); Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller, 957 F.2d 1575, 1578 (11th Cir. 1992) (explaining that dicta is neither law of the case nor binding precedent); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1315 (11th Cir. 1998) (Carnes, J., concurring) ("For these reasons, among others, dicta in our opinions is not binding on anyone for any purpose.").

the Kenwood Elementary School within an hour of concluding his conversation with claudia13x.[9] We agree.

*U.S.S.G. § 2A3.2*

As stated above, whether Miranda should have been sentenced under § 2A3.2 is dependent upon the definition of "sexual act." The Guideline's definition of "sexual act" is important because § 2A3.2 applies to offenses "involving the criminal <u>sexual abuse</u> of an individual who had not attained the age of 16 years." U.S.S.G. § 2A3.2, cmt. background (emphasis added). The term "sexual abuse" includes offenses that involve a "sexual act." <u>See</u> 18 U.S.C. § 2241, <u>et seq</u>.

Looking at the definition of a sexual act, it is impossible to conclude anything but that Miranda's conduct constituted an attempted sexual act with latinaprincezz13 and claudia13x. Even the most cursory view of the record reveals "reliable and specific evidence" of Miranda's conduct amounting to an attempted "sexual act" with latinaprincezz13 and claudia13x. <u>See</u> <u>United States v. Lawrence</u>, 47 F.3d 1559, 1566-67 (11th Cir. 1995).

With latinaprincezz13, Miranda discussed menstrual cycles and pregnancy protection. He also point-blank asked her "Do you [latinaprincezz13] want to

---

[9]We note that Defendant Miranda did not testify at trial or at sentencing.

have sex?" Although the two of them could not agree on a mutually convenient meeting time or place, the tenor of the conversation and the content of Miranda's questions are "reliable and specific evidence" of Miranda's conduct consisting of an attempted sexual act with latinaprincezz13.

Miranda's conversations with claudia13x are even more conclusive. Their online discussions included references to her menstrual cycle, protection against pregnancy, and the use of condoms. Furthermore, Miranda specifically asked claudia13x how she wanted him to "make love" to her and if she "kn[e]w any position [she] would like to experiment." In their conversation that concluded less than one hour before they were to meet, Miranda indicated to claudia13x that sex would not hurt and that he would "make sure" that she did not get pregnant. When claudia13x pressed Miranda for how they could make sure she did not get pregnant, he responded, "We can use condom [sic]."

Here, the district court concluded that she was not prepared to say that "based on [her] own experience as a human being that a person who talks a lot of sex–talks a lot about sex is necessarily going to act on it." Such personal experience is irrelevant to the case at hand because the evidence in this case supports only one conclusion: Miranda's conduct consisted of an attempted sexual act with whom he believed were two young girls. While the district court's

19

personal experience with the average human being may be correct, Miranda is not an average human being.  Miranda is a middle-aged man who conversed extensively with whom he believed to be twelve- and fourteen-year-old girls and asked them to have sex with him.  The only reasonable construction of Miranda's words to both latinaprincezz13 and claudia13x is that he wanted to have sexual intercourse with them, and, therefore, Miranda's conduct consisted of an attempted sexual act.  No district court faced with this record could correctly conclude otherwise.[10]

---

[10]We point out that Defendant Miranda had two psychosexual evaluations completed after his conviction, but the district court did not mention or rely on them and, in any event, they do not help Miranda.  Dr. Elsa M. Marban completed Defendant Miranda's first  psychosexual evaluation, but that written psychosexual evaluation is not in the record.  The only evidence of the content of that evaluation is in the PSI, where the probation officer states that Dr. Marban concluded that Miranda's actions were reflective of behavior which indicated that Miranda had "sexually arousing fantasies and urges with pre-pubescent children."  The PSI further states that Dr. Marban made no mention that the Defendant did not want to have sex with the victim.

The PSI further notes that Dr. Rappaport conducted Miranda's second psychosexual evaluation, but did not submit a written report.  According to the PSI, the probation officer conducted a telephone interview with Dr. Rappaport in which Dr. Rappaport noted that "the defendant may not have wanted to actually have sexual contact with the victim, but was sexually aroused by the fantasy and anticipation of the encounter." (Emphasis added).  Of course, if Miranda was merely sexually aroused by the fantasy and anticipation of the encounter, there was no need to actually drive to the Kenwood Elementary School to meet claudia13x.  In any event, Dr. Rappaport rendered no opinion with any degree of certainty, much less to a medical certainty, as to whether Defendant Miranda intended to have sex or merely some form of sexual contact with claudia13x.  Thus, we are left with evaluating Miranda's own words in the chatroom, and the only reasonable construction of those words, as explained above.

20

In United States v. Panfil, 338 F.3d 1299 (11th Cir. 2003), this Court addressed the application of § 2A3.2 to another child predator case.[11] In Panfil, a Special Agent with the United States Secret Service logged onto the Yahoo! Internet Chat room under the screen name "Hialeahnina13." Id. at 1299-300. Brian Panfil logged in under the name "Freeoralslave," and contacted Hialeahnina13. Id. at 1300. After Hialeahnina13 identified herself as a 13-year-old female, Panfil initiated a sexually explicit Internet conversation. Id. Specifically, Panfil offered to perform oral sex, informing Hialeahnina13 that oral sex would "relax you" and "make u feel good." Id. After Panfil and Hialeahnina13 agreed to meet the next evening at 10:00 p.m., Panfil encouraged Hialeahnina13 to sleep well, telling her "you will have some powerful orgasms tomorrow." Id.

The next day, Panfil contacted Hialeahnina13 to confirm the meeting time and place. Panfil, 338 F.3d at 1300. However, when Panfil arrived at the pre-determined meeting location, he was immediately arrested and subsequently pled guilty to violating 18 U.S.C. § 2422(b). Id.

---

[11]Panfil addressed the 2001 version of § 2A3.2, whereas Miranda was sentenced under the 2000 version of § 2A3.2. Although the two versions of § 2A3.2 contain substantively different components, Panfil's discussion of the definition of "sexual act" is still relevant because the definition of "sexual act" remains unchanged.

In interpreting Panfil's conduct under the same definition of a sexual act we are faced with here, the <u>Panfil</u> Court easily concluded that Panfil's actions constituted an attempted sexual act. In the present case, there is significantly more evidence showing Miranda's conduct, and we readily conclude that Miranda should have been sentenced under § 2A3.2 (Attempted Sexual Abuse).

*U.S.S.G. § 2A3.4*

Having concluded that § 2A3.2 (Attempted Sexual Abuse) applies to Miranda's conduct, we address § 2A3.4 (Attempted Sexual Contact) in order to determine whether § 2A3.4's plain language could apply to Miranda's case and, thereby, present the district court with a conflict. See <u>Panfil</u>, 338 F.3d at 1303. Section 2A3.4 applies to offenses constituting "<u>sexual contact</u> not amounting to criminal sexual abuse." U.S.S.G. § 2A3.4, cmt. background (emphasis added).

Section 2A3.4 defines sexual contact in the negative and excludes any conduct that constitutes a "sexual act." <u>Panfil</u>, 338 F.3d at 1303. Because we have already determined that Miranda's conduct constituted an attempted "sexual act" and "§ 2A3.4 excludes any conduct that is a 'sexual act,' we do not find any language in § 2A3.4 that would place it in conflict with § 2A3.2." <u>Id.</u> (footnote omitted). Because Miranda's conduct consisted of an attempted "sexual act" with latinaprincezz13 and claudia13, the district court erroneously applied U.S.S.G.

22

§ 2A3.4. Consequently, we vacate Miranda's sentence and remand this case to the district court so that Miranda may be resentenced under § 2A3.2.

C.     Misrepresentation of Miranda's True Identity

The government also argues that the district court erred by failing to assess a two-level specific offense enhancement for Miranda's misrepresentation of his age. The government contends that the evidence demonstrated that Miranda misrepresented that he was 35 years old instead of 40 to persuade or entice claudia13x to have sex with him. The government argues that Miranda's age misrepresentation, despite being a difference of only five years, was material because it was intended to influence claudia13x to meet him for purposes of having sexual intercourse.

The application of U.S.S.G. § 2A3.2(b)(2)(A)(i),[12] which provides for a two-level specific offense enhancement if "the offense involved the knowing misrepresentation of a participant's identify to . . . persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct" is an issue of first impression in this circuit. Our sister circuits also have not examined these guideline provisions. Application Note 5 of § 2A3.2 provides that a two-level enhancement may apply when a defendant misrepresents his "name, age,

_____

[12]Section 2A3.4(b)(4)(A) contains similar language.

23

occupation, gender, or status, as long as the misrepresentation was made with the intent to . . . persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct." U.S.S.G. § 2A3.2, cmt. n.5 (emphasis added).[13]

We first conclude that the district court did not clearly err in finding that Miranda's misrepresentation of his age as 35 instead of 40 was not "made in order to persuade or induce" claudia13x into having sex. While there is evidence from which the district court could have found that Miranda intended to persuade or induce claudia13x by misrepresenting his age, we cannot say that the district court clearly erred in its contrary fact finding.

For example, Miranda made the same misrepresentation of his age to the agents at the time of his arrest. It was only after an agent saw Miranda's driver's license and posed the age question a second time that Miranda gave his correct age. While the government argues that Miranda was mistakenly remaining in his assumed identity, we conclude that a factual issue was presented for the district court as to whether Miranda made the statement in order to persuade or induce

---

[13]Application Note 6 of § 2A3.4 contains similar language. See U.S.S.G. § 2A3.4, cmt. n.6.

claudia13x into having sex, and we cannot say that the district court clearly erred in its factual finding.[14]

The district court also concluded that Miranda's misrepresentation of his age to claudia13x was "not a material misrepresentation" and, therefore, a two-level enhancement was inappropriate. The parties do not dispute that materiality is required for the two-level enhancement to apply; rather, they dispute whether Miranda's age misrepresentation was, in fact, material. The government asserts that a misrepresentation is material if it has "a natural tendency to influence, or is capable of influencing" a decision maker. Cf. United States v. Gregg, 179 F.3d 1312, 1315 (11th Cir. 1999) (addressing materiality in the bank fraud context). Furthermore, the misrepresentation "need not have exerted actual influence, so long as it was intended to do so and had the capacity to do so." Id.[15]

We need not determine whether the government's definition of materiality is appropriate in the Internet predator context or whether the district court correctly

---

[14]The parties agree that the district court made a factual finding, based on the evidence, that Miranda's misrepresentation of his age was not made for the purpose of persuading or inducing a minor to have sex. The parties also agree that we review that factual finding for clear error. See United States v. Hasner, 340 F.3d 1261, 1276 (11th Cir. 2003) ("We review de novo the district court's interpretation and application of the Sentencing Guidelines and review the factual findings underlying decisions for clear error.") (citation omitted).

[15]The district court's determination that Miranda's misrepresentation was not material is a mixed question of law and fact, and is, therefore, reviewed de novo. United States v. Frank, 247 F.3d 1257, 1259 (11th Cir. 2001).

25

determined that Miranda's misrepresentation was not material because this Court already has concluded that the district court in this case did not clearly err when determining that Miranda did not misrepresent his age with the intent to induce or entice claudia13x into having sex with him. Accordingly, we conclude that the district court correctly refused to assess Miranda a two-level specific offense enhancement for misrepresentation of his age.

## IV. CONCLUSION

Based on all the above, we vacate Miranda's sentence and remand this case to the district court for resentencing consistent with this opinion.

VACATED and REMANDED.