[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 21, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11933

_____

D. C. Docket No. 03-00667-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES RONALD DAVIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(**April 21, 2006**)

Before DUBINA, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

James Ronald Davis appeals his sentence for inducing a person to travel in

interstate commerce in furtherance of a scheme to defraud that person. Davis

argues that the district court (1) erroneously applied a two-level enhancement for the use of "sophisticated means" in the scheme to defraud, (2) erroneously relied on facts that Davis did not admit when it ordered restitution in violation of United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), (3) erroneously admitted hearsay testimony of a private investigator to describe the victims' loss at Davis's sentencing hearing in violation of Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), and (4) erroneously applied the guidelines as advisory in violation of the Ex Post Facto Clause. We affirm.

## I. BACKGROUND

In October 2000, Davis and Robert Peterson incorporated Reliant Technologies Group, Inc. Through Reliant, Davis and Peterson sold "vending machines called 'Prepaid Express' which dispensed prepaid telephone cards, cellular telephones, and beepers" and advertised this investment opportunity on the Rush Limbaugh radio show. In these advertisements, Reliant stated that it was "MCI Worldcom's exclusive U.S. marketers." The advertisements provided a toll-free number for prospective investors to call.

Investors who responded using the advertised phone number spoke with either Davis or Peterson. Davis and Peterson referred the potential investor to one or more shills, "references" who were paid by Reliant to make false statements

2

about the profits they made operating the machines. "[T]he shills were located outside Georgia." Prospective investors were then urged to visit Reliant's facilities in the Atlanta, Georgia, area at Reliant's expense.

The investors were sorely disappointed. They "found the machines arrived late, and often did not work properly. The inventory sent was not what was promised and sometimes would not dispense properly from the machines." "Some victims did not receive the machines and/or inventory." An investigation ensued, and on November 13, 2003, Davis and Peterson were indicted on forty-two counts related to the fraud. See 18 U.S.C. § 2314.

Each count in Davis's indictment related to a specific victim of the fraud. On May 26, 2004, Davis pleaded guilty to Count One of the indictment in exchange for dismissal of the remaining charges. The plea agreement provided, "The defendant understands that the Probation Office and the Court may still consider the conduct underlying such dismissed counts in determining relevant conduct under the Sentencing Guidelines."

The PSI applied the 2000 version of the Sentencing Guidelines and calculated a base offense level of six. The PSI recommended an 11-level enhancement for an amount of loss in excess of $800,000; this amount was based on $781,243 allocated to victims included in the indictment and $123,040 allocated

3

to victims for which Davis was not indicted for a total of $904,283.  See U.S.S.G. § 2F1.1(b)(1)(L).  The PSI also recommended a two-level enhancement because the "scheme to defraud involved more than one victim and involved more than minimal planning," see id. § 2F1.1(b)(2)(B), a two-level enhancement "because the offense was committed through mass-marketing," see id. § 2F1.1(b)(3), a two-level enhancement "because the offense involved 'sophisticated means,'" see id. § 2F1.1(b)(6)(C), a two-level enhancement for violation of a judicial order, see id. § 2F1.1(b)(4)(C), and a two-level enhancement for Davis's role as the organizer of the scheme, see id. § 3B1.1(c).  After a three-level reduction for acceptance of responsibility, see id. §§ 3E1.1(a), (b), Davis's total offense level was 24.  With a criminal history category of I, the guidelines range was 51 to 63 months of imprisonment.

At the sentencing hearing, the government presented the testimony of Robin Martinelli, a private investigator who worked for the victims of Davis's fraud scheme.  Martinelli sought to testify to the impact of the fraud scheme on the victims.  Davis objected to Martinelli's testimony on the ground that it was hearsay and not subject to cross-examination.  See Crawford, 541 U.S. at 59, 124 S. Ct. at 1369.  The district court overruled the objection.

4

Davis also raised several objections to the enhancements recommended in the PSI. First, Davis contended that the amount of loss exceeded the total loss charged in the indictment, and the government conceded that the amount of loss should be based on only the victims for which Davis was indicted. This concession resulted in a ten- instead of eleven-level enhancement, a total offense level of 23, and a guidelines range of 46 to 57 months of imprisonment. Second, Davis argued that it was a violation of the Ex Post Facto Clause of the Constitution, U.S. Const. art. I, § 9, cl. 3, to apply the remedial holding of Booker to allow the district court to find facts to support sentencing enhancements under an advisory scheme. Third, Davis objected to the two-level enhancement for the use of "sophisticated means" on two grounds: there was insufficient evidence to support the enhancement and applying the enhancement along with the enhancements for mass advertising and more than minimal planning would result in "double counting." Fourth, Davis argued that the district court could not order restitution to victims for which he was indicted but did not plead guilty under Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000), and Booker, 543 U.S. at 243-44, 125 S. Ct. at 755-56.

The district court overruled Davis's second and third objections and sentenced Davis to 48 months of imprisonment. The district court also overruled

5

Davis's fourth objection and imposed restitution under the Mandatory Victim Restitution Act in the amount of $781,243. See 28 U.S.C. § 3663A(a)(2). This amount reflected the total loss charged in the indictment.

## II. STANDARD OF REVIEW

This Court reviews the factual findings of the district court for clear error, but reviews de novo the interpretation of the sentencing guidelines. United States v. Miranda, 348 F.3d 1322, 1330 (11th Cir. 2003). "Whether the cumulative enhancement of a sentence under two separate guideline provisions constitutes impermissible double counting presents a question of law reviewed de novo." United States v. Humber, 255 F.3d 1308, 1311 (11th Cir. 2001). This Court reviews de novo "the scope of constitutional rights." United States v. Cantellano, 430 F.3d 1142, 1144 (11th Cir. 2005), cert. denied, No. 05-9303, ___ U.S. ___, ___ S. Ct. ___, 2006 U.S. LEXIS 2450 (March 20, 2006).

## III. DISCUSSION

Davis raises four issues on appeal. First, Davis argues that the enhancement for the use of sophisticated means was erroneous. Second, Davis argues that the district court erroneously relied on facts not admitted by Davis in determining the amount of restitution. Third, Davis argues that the district court erroneously admitted Martinelli's hearsay testimony during his sentencing hearing. Fourth,

6

Davis contends the application of the remedial holding of <u>Booker</u> violates the Ex Post Facto Clause because it permitted the district court to engage in judicial factfinding to enhance his sentence.  We address each argument in turn.

### A.  *The District Court Did Not Erroneously Enhance Davis's Sentence for the Use of Sophisticated Means.*

Davis raises two arguments to challenge his enhancement for the use of sophisticated means.  First, Davis argues that the evidence does not support the enhancement.  Second, Davis contends that the enhancement constitutes double counting because it is based on the same evidence as his enhancements for more than minimal planning and mass advertising.

### 1.  The Evidence Supported Davis's Enhancement for the Use of Sophisticated Means.

Davis argues that the district court erroneously imposed the sophisticated means enhancement under guidelines section 2F1.1(b)(6) because there is insufficient evidence to support it.  Section 2F1.1 of the 2000 version of the United States Sentencing Guidelines provides, "If (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means, increase by 2 levels."  U.S.S.G. § 2F1.1(b)(6)

(2000). The commentary states, "For purposes of subsection (b)(6)(C), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Id. cmt. 18. The section also provides examples: "[I]n a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction would ordinarily indicate sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore bank accounts also ordinarily would indicate sophisticated means." Id. The sophisticated means enhancement is "essentially a factual issue, which is entrusted primarily to the district court." United States v. Barakat, 130 F.3d 1448, 1457 (11th Cir. 1997) (interpreting the sophisticated means enhancement under guidelines section 2T1.1(b)(2)).

Davis's enhancement for the use of sophisticated means is supported by the evidence. The facilities of Reliant were in Atlanta, Georgia, but the shills operated in other states. It is not clearly erroneous for the district court to find that the shills were part of the "soliciting operations" and located in "another jurisdiction" than the facilities. U.S.S.G. § 2F1.1(b)(6), cmt. 18. These facts fall directly within the example provided in the comments. Id.

8

Despite Davis's assertions, his offense was not a "garden variety fraud scheme." The scheme involved nationwide advertising, a purported exclusive partnership with MCI/WorldCom, a toll-free number that provided phony references to facilitate the fraud, and a plan to induce victims to travel to Georgia to encourage them to invest. The fraud took place over a seven-month period. Taken as a whole, these facts qualify as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Id. The evidence supports Davis's enhancement for the use of sophisticated means in his fraud.

### 2. The Enhancement Did Not Result in Double Counting.

Davis argues that the district court committed impermissible double counting when it imposed the sophisticated means enhancement along with the more than minimal planning and mass marketing enhancements. "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Naves, 252 F.3d 1166, 1168 (11th Cir. 2001). On the other hand, "[d]ouble counting a factor during sentencing is permitted if the Sentencing Commission [] intended that result and each guideline section in question concerns conceptually

9

separate notions relating to sentencing." United States v. Stevenson, 68 F.3d 1292, 1294 (11th Cir. 1995). "We presume that the Commission intended to apply separate guideline sections cumulatively unless specifically directed otherwise." Id. Davis argues that, because "identical facts were utilized to support" the three enhancements, the enhancements constitute double counting.

The language of the guidelines undermines Davis's argument. See U.S.S.G. § 2F1.1. The commentary to section 2F1.1 states, "The enhancement for sophisticated means under subsection (b)(6)(C) requires conduct that is significantly more complex or intricate than the conduct that may form the basis for an enhancement for more than minimal planning under subsection (b)(2)(A)." Id. cmt. 18. This statement evidences that the drafters contemplated the application of both the more than minimal planning enhancement and the sophisticated means enhancement. The commentary also shows that the sophisticated means enhancement requires more evidence than the more than minimal planning enhancement.

The evidence supporting the sophisticated means enhancement was not "fully accounted for" by the more than minimal planning enhancement. Naves, 252 F.3d at 1168. In particular, the use of shills in other states provides an independent ground for the sophisticated means enhancement. See U.S.S.G. §

10

2F1.1, cmt. 18. Because there is nothing in section 2F1.1 to suggest that the guidelines sections are not to be applied cumulatively, we affirm the enhancement for the use of sophisticated means. See Stevenson, 68 F.3d at 1294; see also Humber, 255 F.3d at 1314 ("A defendant who uses sophisticated means will always receive, in addition, an enhancement for more than minimal planning.").

### B. The District Court Did Not Err When It Determined the Amount of Restitution.

Davis argues that the district court erroneously awarded restitution based on facts he did not admit when he pleaded guilty in violation of Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-63, and Booker, 543 U.S. at 243-44, 125 S. Ct. at 755-56. We disagree. The district court did not err when it calculated the amount of restitution because this Court recently held that "Booker does not apply to restitution orders." United States v. Williams, No. 04-15117, ___ F.3d ___, 2006 U.S. App. LEXIS 9211, *20 (April 13, 2006). Furthermore, even if Booker applied to restitution orders, there would be no error because the facts relied upon by the district court were contained in the PSI and Davis did not contest those facts.

*C.  The District Court Properly Considered Martinelli's Testimony.*

Davis argues that the district court erroneously admitted Martinelli's hearsay testimony at his sentencing hearing in violation of Crawford, 541 U.S. at 59, 124 S. Ct. at 1369, but we rejected this argument in Cantellano, 430 F.3d at 1144.  In Cantellano we held, "The right to confrontation is not a sentencing right."  Id. Because our precedents foreclose Davis's argument and Davis does not challenge the reliability of Martinelli's testimony, see United States v. Zlatogur, 271 F.3d 1025, 1031 (11th Cir. 2001), we affirm the admission of Martinelli's testimony.

*D.  The Application of Booker's Remedial Holding Does Not Violate the Ex Post Facto Clause.*

Davis argues that the district court erroneously applied the remedial holding of Booker, 543 U.S. at 259-60, 125 S. Ct. at 764-65, to permit judicial factfinding to increase his sentence in violation of the Ex Post Facto Clause.  Davis contends that his sentence was based on evidence that he did not admit when he pleaded guilty, although this assertion is dubious given his failure to object to the facts contained in the PSI.  Davis argues that "[t]he district court did not have the authority to treat the federal guidelines as non-mandatory" because to allow a sentence outside the guidelines range would violate the Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3.

Even if we assume Davis did not admit the facts relied upon by the district court, Davis's argument fails.  See United States v. Duncan, 400 F.3d 1297, 1307-08 (11th Cir.), cert. denied, 126 S. Ct. 432 (2005).  In Duncan, this Court held that a defendant has sufficient notice of the potential penalty for a crime based on the statutory maximum to satisfy the Ex Post Facto Clause and the Due Process Clause of the U.S. Constitution.  Id.  We affirm the use of advisory guidelines by the district court.

## IV.  CONCLUSION

Davis's sentence, including the order of restitution, is

**AFFIRMED**.

13