**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80257**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                                    Elisabeth A. Shumaker
    Clerk                                                                                  Chief Deputy Clerk

November 29, 2000


**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   00-6053, *United States v. Cryar*
          Filed on November 20, 2000

        The court's slip opinion contains a typographical error on page 15, last full
sentence on the page.  The age reference in the sentence is corrected to read "a
victim under 12 years old."  The corrected sentence now reads as follows:

        The jury was instructed that the government must demonstrate that the
        defendant (1) crossed a State line with (2) the intent to commit a sexual
        act with a victim under 12 years old.

A copy of the corrected page 15 is attached.

                                        Sincerely,

                                        Patrick Fisher, Clerk of Court


                                        By:
                                                Keith Nelson
                                                Deputy Clerk


encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 20 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN GARLAND CRYAR,

Defendant-Appellant.

No. 00-6053

---

**Appeal from the United States District Court**
**For the Western District of Oklahoma**
**(D.C. No. CR-99-126-R)**

---

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

Daniel G. Webber, Jr., United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **SEYMOUR** , **KELLY** , and **HENRY** , Circuit Judges.

---

**HENRY** , Circuit Judge.

---

Mr. John Garland Cryar was indicted in the Western District of Oklahoma on four counts: (1) counts one and three charged that on two occasions in June 1999, Mr. Cryar crossed the state line between Texas and Oklahoma with the intent to engage in a sexual act with a six-year old girl in violation of 18 U.S.C. § 2241(c); (2) counts two and four charged that Mr. Cryar knowingly transported child pornography in interstate commerce in violation of 18 U.S.C. § 2252(a)(1). Mr. Cryar pleaded guilty to counts two and four (the pornography counts) and was tried on the attempted sexual abuse counts. At the close of the government's case Mr. Cryar moved for a judgment of acquittal, alleging that the government failed to prove his travel from Texas to Oklahoma was for the dominant purpose of having sex with a minor and that the district court lacked venue. The district court overruled the motions.

Mr. Cryar was convicted on the sexual abuse counts and sentenced to 144 months on all four counts and five years of supervised release, and received a special assessment of $400.00.

Mr. Cryar appeals (1) the overruling of the motion for judgment of acquittal for lack of venue; (2) the district court's refusal to give Mr. Cryar's proffered instruction on venue; (3) the sufficiency of the evidence to support the attempted sexual abuse convictions; and (4) the district court's calculation of his base offense level. For the reasons set forth below, we affirm.

## I. BACKGROUND

Mr. Cryar's convictions stemmed from a relationship with Daniel Sharpton, whom Mr. Cryar met while serving a federal sentence for possession of child pornography. In May 1999, after tornados damaged a large part of the Oklahoma City area, Mr. Cryar, residing in Texas, contacted Mr. Sharpton and they commenced an informal roofing business relationship where Mr. Cryar would travel to Oklahoma City and perform roofing estimates and inspections.

During that month, Mr. Sharpton testified that Mr. Cryar told Mr. Sharpton how he liked "really young" girls from ages four to ten and that Mr. Cryar told him of various experiences with young girls. Upon meeting Mr. Sharpton's six year old sister-in-law in Oklahoma, Mr. Cryar

expressed an interest in babysitting her alone. Mr. Cryar stated that he had no interest in babysitting her seven year old brother. Mr. Sharpton testified that Mr. Cryar spoke of his sexual experiences with female children on various occasions.

In late May 1999, Mr. Cryar returned to his home in Texas. At that time, Mr. Sharpton, awaiting sentencing for a bank fraud conviction, contacted his probation officer about Mr. Cryar's conversations. The probation officer put him in touch with the Federal Bureau of Investigation. Mr. Sharpton informed the FBI of these and other similar conversations with Mr. Cryar. Mr. Sharpton agreed to have audio and video surveillance equipment installed in his truck. Beginning on May 30, 1999, Mr. Sharpton proceeded to record telephone conversations with Mr. Cryar while Mr. Cryar was in Texas. When Mr. Cryar returned to Oklahoma, and the two traveled between jobs, Mr. Sharpton recorded these conversations as well.

The audio and video recordings were admitted at trial as exhibits, and contained several conversations revolving around Mr. Cryar's sexual experiences with female children. On several occasions, Mr. Cryar encouraged Mr. Sharpton to arrange a daytime or overnight visit with Mr.

-4-

Sharpton's six year old sister-in-law. On June 8, 1999, Mr. Cryar traveled again to Oklahoma from Texas and he and Mr. Sharpton discussed Mr. Cryar's desire to babysit Mr. Sharpton's sister-in-law at his hotel for either an afternoon or overnight. After Mr. Sharpton appeared to acquiesce to the visit, Mr. Cryar offered suggestions about the specific arrangements to reduce suspicion by the child's mother.

On June 9, 1999, pursuant to instructions from the FBI, Mr. Sharpton told Mr. Cryar he could pick up Mr. Sharpton's sister-in-law from the Oklahoma City Zoo and babysit her for the remainder of the afternoon. The FBI arrested Mr. Cryar upon his arrival at the zoo. The FBI seized receipts indicating that on the two dates charged in the indictment, Mr. Cryar drove from his hometown of Conroe, Texas, to Dallas, Texas and to Oklahoma City on Interstate 35. The FBI also recovered additional materials containing child pornography from Mr. Cryar's truck.

## II. DISCUSSION

Mr. Cryar presents four contentions on appeal: (1) that because he crossed state lines and entered the State of Oklahoma in the Eastern

District of Oklahoma, the Western District of Oklahoma was the improper venue for this proceeding; (2) that the district court should have given his proffered instruction regarding the crossing of state lines; (3) that there was insufficient evidence to support his conviction; and (4) that the district court erred when it calculated his base offense level. We shall consider each contention in turn.

**A. Venue**

Article III of the Constitution generally requires that the trial of any crime be held in the state where the crime was committed. U.S. Const. Art. III, § 2, cl. 3. The Sixth Amendment further requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."

> Our determination of venue raises matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law. They have been adverted to, from time to time, by eminent judges; and Congress has not been unmindful of them. Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed.

United States v. Johnson, 323 U.S. 273, 275 (1944). Fed. R. Crim. P. 18 reinforces these directives: "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed."

The statute at issue, 18 U.S.C. § 2241(c), does not contain a specific venue provision. Where no venue provision is present, "the place at which the crime was committed 'must be determined from the *nature of the crime alleged and the location of the act or acts constituting it*.'" United States v. Medina-Ramos, 834 F.2d 874, 876 (10th Cir. 1987) (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)) (emphasis added); see United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999) ("In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."); United States v. Cabrales, 524 U.S. 1, 6-7 (1998) (stating that the "'locus delicti' [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it").

     1. Nature of the crime

Chapter 109A, entitled "Sexual Abuse," reads:

-7-

<u>Aggravated sexual Abuse</u>

(a) By force or threat.--Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly causes another person to engage in a sexual act--

    (1) by using force against that other person; or

    (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping;

or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

. . .

(c) With children.-- *Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years,* or in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in a sexual act with another person who has not attained the age of 12 years, *or knowingly engages in a sexual act under the circumstances described in subsections (a)* and (b) *with another person who has attained the age of 12 years* but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging), *or attempts to do so,* shall be fined under this title, imprisoned for any term of years or life, or both.

18 U.S.C. § 2241(a), (c) (emphasis added). The legislative history indicates that the nature of the offense to be criminalized is the performance or attempted performance of sexual acts with children, and not the crossing of state lines: "This legislation would establish new Federal jurisdiction over sexual offenses against children when a person commits a crime after crossing state lines with the intent of committing a

sex offense." 142 Cong. Rec. S8636-03, at S8639 (daily ed. July 24, 1996) (statement of Sen. Hutchinson).

We often examine the verbs used in an ambiguous or incomplete statute in order to define the offense. See Medina-Ramos, 834 F.2d at 876 (interpreting 21 U.S.C. § 841(a)(1), which has no venue provision, and noting that "[c]ourts usually examine the verbs employed in the statute to define the offense"). The defendant argues that utilization of the so-called "verb test" suggests that the act of one who *"crosses,"* that is, the crossing, is the overt act which Congress intended to criminalize. But, as the Supreme Court has made clear, the verb test is merely an interpretive device, and is not to be given primacy over other interpretive methods. See United States v. Rodriguez-Moreno, 526 U.S. at 279-80. As in Rodriguez-Moreno, the application of the verb test here would "unduly limit[] the inquiry into the nature of the offense, and thereby creates a danger that certain conduct prohibited by the statute will be missed." See also 142 Cong. Rec. at S8639; cf. Medina-Ramos, 834 F.2d at 876.

To prove the charged violation in this case, the government was required to show that Mr. Cryar crossed stated lines with the intent to engage in a sexual act with a child under twelve, and that he attempted to

-9-

do so. As the Supreme Court determined in Rodriguez-Moreno, the positioning of the "intent" and "attempt" elements of the statute as part of prepositional phrases and not as stand alone verbs "does not dissuade us from concluding that [Mr. Cryar's intent and attempt] were essential conduct elements." 526 U.S. at 280. In sum, we interpret § 2241(c) to contain distinct conduct elements that are relevant here: the crossing of state lines, the intent to engage in the sexual act and the attempt to do so.

2. The location of the acts constituting the offense.

These discrete conduct elements compel us to conclude that Congress intended the criminal statute to be treated as a continuing offense, rather than as an offense that can occur only at one point in time. See United States v. Payne, 978 F.2d 1177, 1180 (10th Cir. 1992) (holding that the continuing offense doctrine should be applied only in those circumstances in which the "explicit language of the substantive criminal statute compels such a conclusion, *or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one*") (internal quotation omitted) (emphasis supplied).

The continuing nature of the offense invokes the federal continuing offense statute that states:

(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. . . .

18 U.S.C. § 3237(a). Here, the offense was completed in the Western District of Oklahoma and, as such, was properly prosecuted there.

The government's analogy to the case of United States v. Cores, 356 U.S. 405 (1958), is instructive. In Cores, the Supreme Court held that an alien crewman, who had willfully remained in the United States in excess of the 29 days that were allowed to him by his landing permit, could be prosecuted in any district through which he passed after the permit had expired. See id. at 407. Although the crime was complete at the moment the permit expired, it continued so long as the alien traveled through the United States with the willful intent to remain here.

Likewise, in this case, venue might arguably exist at the moment of crossing state lines, if the intent and attempt elements were also present. But the crime certainly continued under the statute until the attempt was interrupted, and could be prosecuted in the venue where the interruption occurred. It is certainly not the crossing alone but the crossing in order to engage in sexual activity with underage persons that is criminal. After the

crossing of state lines, any district in which the completion of the crime occurs has venue. As the government points out, Mr. Cryar does not dispute or controvert that he traveled into the Western District of Oklahoma on or about the dates charged; that his intended victim was located there; that his incriminating statements were made there; or that he was apprehended at the Oklahoma City Zoo after being told he would have a chance to be alone there with the child.

This case is also analogous to United States v. Jackson, 482 F.2d 1167 (10th Cir. 1973). Under 21 U.S.C. § 952(a), the importation of certain controlled substances into the United States is prohibited. That statute, like § 2241, does not fix venue explicitly, and the defendant argued that Colorado, the destination site of the drugs in question, did not have venue because the crime was completed when the drugs had been smuggled into California. Noting that the crime could have been prosecuted in California, we cited Cores for the proposition that venue lies in any district used by the defendant to complete his crime. As we have reasoned above, we agree with the district court that this statute is properly thought of as a continuing offense, and thus venue is proper in the Western District of Oklahoma where the defendant sought to complete

-12-

his crime.   See Medina-Ramos, 834 F.2d at 876-77 (considering constructive possession and venue, and determining that "the acts and ability giving rise to constructive possession [of the contraband] can only take place where the possessor is physically present.").

**B. Instructing the jury on venue**

Mr. Cryar next argues that the district court erred by failing to instruct the jury on venue, specifically by failing to give his proffered venue instruction.  Venue is a fact question, normally decided by the jury. See United States v. Miller, 111 F.3d 747, 749 (10th Cir. 1997).  Venue must be proved, as it is an element of the offense, but it need only be proved in this circuit by a preponderance of the evidence.   Id. at 749-50. Failure to instruct on venue is not reversible, however, if the jury verdict by necessity incorporated the findings of venue.   United States v. Byrne, 171 F.3d 1231, 1235 (10th Cir. 1999);   Miller, 111 F.3d at 751 (stating that "failure to instruct on venue, when requested, is reversible error unless it is beyond a reasonable doubt that the jury's guilty verdict on the charged offense necessarily incorporates a finding of proper venue").

The defendant's proposed jury instruction in this case was improper. [1] Mr. Cryar suggests that the definition of the essential elements of counts one and three includes "[t]hat the offense of crossing the state line occurred in the Western District of Oklahoma." Rec. vol. I, doc. 44. This is simply a replay of his first argument.

The government is correct that the last clause of the defendant's proffered instruction carried the implicit direction that the "crossing" referred to in the statute was a venue-setting event, which we have already

---

[1] The district court gave the following instruction as to the essential elements of counts one and three of the indictment:

In order to sustain its burden of proof for the crime of crossing a State line with intent to engage in a sexual act with a person under the age of 12 years, the Government must prove the following essential elements beyond a reasonable doubt:

First: That the Defendant crossed a state line;
Second: That the Defendant did so with the intent to commit a sexual act with a person under 12 years old.

With regard to the second element listed above, you are instructed that illicit activity with Jane Doe need not be the sole or primary purpose for traveling across state lines. It is sufficient if the intent to commit a sexual act with Jane Doe was one of the Defendant's efficient and compelling purposes, or one the of the Defendant's dominant purposes, in making the trip.

Rec. vol. I, doc. 47.

shown is incorrect. Thus, the district court was correct to refuse giving this erroneous instruction. As noted above, the government is also correct that the facts establishing the attempted completion of the continuing crime in Oklahoma City were not, in fact, contested. Thus, the verdict by necessity incorporated the findings of venue, and is not reversible error.

### C. Sufficiency of the Evidence

Mr. Cryar next challenges the sufficiency of the evidence at trial to support his conviction. In reviewing sufficiency of the evidence, we review the record de novo and ask only, when taking the evidence together with reasonable inferences drawn from it in the light most favorable to the government, a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. See United States v. Beers, 189 F.3d 1297, 1301 (10th Cir. 1999).

Specifically, Mr. Cryar contends that the dominant purpose of his crossing the state line from Texas to Oklahoma was to earn a living, and not to commit a sexual act. The jury was instructed that the government must demonstrate that the defendant (1) crossed a State line with (2) the intent to commit a sexual act with a victim under 12 years old. The

instruction continued to state that "illicit sexual activity" need not be the "sole or primary purpose," but was "sufficient if the intent to commit a sexual act . . . was one of the Defendant's efficient and compelling purposes, or one of the Defendant's dominant purposes" for traveling across state lines. Rec. vol 1, doc. 47. [2]

Our review of the record determined there was ample evidence for a jury to determine that a motivating or dominant purpose of Mr. Cryar's travels to Oklahoma was to spend time with and attempt to engage in sexual acts with a child under twelve years old. Cf. United States v. Vang, 128 F.3d 1065, 1071-72 (7th Cir. 1997) (explaining that under the

---

[2] On this issue, the government disputes the above instruction by the district court and contends that the instruction raised the bar of proof for the government from demonstrating a mere *intent* to engage in illicit sexual activity, to demonstrating that the *dominant purpose* of the travel was to engage in that activity. Section 2241(c) states that "intent," not "dominant purpose," is required. The government suggests that the trial court was misled by United States v. Meacham, 115 F.3d 1488, 1495 (10th Cir. 1997) when it instructed the jury. Meacham interpreted the statutory successor to the Mann Act, 18 U.S.C. § 2423, which refers to the interstate traveler's "dominant purpose." The Meacham court held that "illicit sexual activity need not be the only purpose for interstate travel; it is sufficient if it was one of the defendant's 'efficient and compelling purposes.'" (internal citation omitted). Although the government's argument has logical appeal, we need not decide it to affirm this conviction. If the jury convicted Mr. Cryar of violating the higher standard in the court's instruction, it of necessity convicted him of the lower intent standard.

Mann Act, immoral conduct need not be the sole reason for transportation, nor need it "be the most important of defendant's reasons when multiple purposes are present") (internal quotation omitted). Specifically, Mr. Cryar explained several occasions where he engaged in sexual experiences with young girls; he expressed an interest in spending time alone with Mr. Sharpton's sister-in-law for the purpose of engaging in sexual acts, and his fascination with pornographic material involving children is undisputed. Accordingly, we affirm Mr. Cryar's convictions under § 2241(c).

## D. Sentencing Calculation

Mr. Cryar's final challenge is to the district court's application of USSG §2A3.1 [3] when it computed Mr. Cryar's offense level. That section

---

[3] §2A3.1 reads in part:

CRIMINAL SEXUAL ABUSE; ATTEMPT TO COMMIT CRIMINAL SEXUAL ABUSE

(a) Base Offense Level: 27
(b) Specific Offense Characteristics

(1) If the offense was committed by the means set forth in 18 U.S.C. § 2241(a) or (b) (including, but not limited to, the use or display of any

(continued...)

applies to offenses "committed by the means set forth in 18 U.S.C. § 2241(a) or (b)." USSG §2A3.1(b). Mr. Cryar contends that the proper offense conduct level should have been calculated under USSG §2X1.1, which applies to general attempt, solicitation or conspiracy offenses that are not covered by a specific offense guideline. See USSG §2X1.1(c) (stating "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section."). That §2A3.1 applies to § 2241(c) is not in dispute. See USSG App. A.

The success of Mr. Cryar's offense level challenge is dictated by our above interpretation of § 2241(c) crimes. Mr. Cryar's challenge to the application of §2A3.1(b) stems from the faulty premise that § 2241(c)

---

[3](...continued)
dangerous weapon), increase by 4 levels.

(2) (A) If the victim had not attained the age of twelve years, increase by 4 levels; or (B) if the victim had attained the age of twelve years but had not attained the age of sixteen years, increase by 2 levels.

(3) If the victim was (A) in the custody, care, or supervisory control of the defendant; or (B) a person held in the custody of a correctional facility, increase by 2 levels.

criminalizes behavior at the point in time of the crossing of the State line. Because at the time of crossing, Mr. Cryar made no attempt to engage in a sexual act with a child, the argument continues, §2X1.1 is the applicable guideline section. Once again we note that Mr. Cryar was not convicted of *crossing* state lines while holding impure thoughts, but rather he was convicted of the crossing of state lines with the intent to engage or attempt to engage in a sexual act with a person under the age of twelve. The district court did not err when it calculated Mr. Cryar's offense level under USSG §2A3.1.

For the reasons stated above, we AFFIRM the judgment of the district court.