

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-5-2004

# USA v. Hayward

Precedential or Non-Precedential: Precedential

Docket No. 02-4540P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Hayward" (2004). *2004 Decisions*. Paper 895.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/895

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-4540
_____

UNITED STATES OF AMERICA

v.

SCOTT HAYWARD,
Appellant

_____

On Appeal from the United States
District Court
for the Western District of Pennsylvania
Criminal Action No. 02-cr-00063
District Judge: Honorable Alan N. Bloch

_____

Argued December 11, 2003
_____

Before: AMBRO, FUENTES, and
GARTH, Circuit Judges

(Opinion Filed: March 5, 2004)

OPINION

_____

Shelley Stark
Karen Sirianni Gerlach       (Argued)
Michael J. Novara
Renee Pietropaolo
Lisa B. Freeland
Office of the Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, Pennsylvania 15222

   Attorneys for Appellant,
   Scott Hayward

Mary Beth Buchanan
Kelly R. Labby (Argued)
Bonnie R. Schlueter
Office of the United States Attorney
700 Grant Street
Suite 400
Pittsburgh, Pennsylvania 15219

   Attorneys for Appellee,
   United States of America

Garth, Circuit Judge:

Scott Hayward ("Hayward") appeals from the District Court's judgment and sentence. Judgment was entered against Hayward after a jury convicted him of violating 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity). He was sentenced to 15 years in prison, with a three-year term of supervised release, and was ordered to make restitution in the amount of $12,289.78. We will affirm Hayward's conviction, but we will remand the case

-1-

to the District Court for re-sentencing.

## I.

At the time the facts giving rise to this case occurred, Hayward and his wife owned the Pennsylvania Cheerleading Center ("PCC"), a competitive cheerleading school located outside of Pittsburgh, Pennsylvania. PCC conducted after-school and weekend classes in cheerleading, tumbling and acrobatics, and prepared its students for team cheerleading competitions. Hayward worked at PCC as a cheerleading coach.

In January 2000, PCC and other teams were invited to take part in the World Cheerleading Association's "World Tour of Champions" to be held on April 8-17, 2000, which involved a tour of Europe and a national competition. V-14, V-15 and V-18,[1] along with three other cheerleaders aged 16 and 17, went on the tour with Hayward.

Prior to the trip, Hayward held a meeting for the participating cheerleaders' parents, at which he stated that he and his wife, Mary Hayward, and a PCC coach named Larry Guerrero would serve as chaperones for the trip.

---

[1] The record, in deference to their age, identifies the girls as V-14, V-15 and V-18. We will employ this same identification throughout this opinion.

Hayward also distributed an itinerary supplied by the World Cheerleading Association and detailed the rules for the trip, which included prohibitions on smoking, drinking, drug use and contact with boys. Immediately after the parents' meeting, Hayward met with the six girls attending the tour and told them that the itinerary was "just for show" and that they would "have fun" on the trip. He told the cheerleaders they would be allowed to drink alcohol on the trip. He also said that "whatever happened in London would stay in London." Hayward testified at trial that he did so because the girls were upset after reading the strict itinerary and were threatening not to attend the tour.

Upon arriving at the airport, the girls and their parents were informed that Mary Hayward and Larry Guerrero were not leaving with the group, but would join them a few days later. When the cheerleaders left for England, Scott Hayward was the only chaperone.

At the hotel in London, the girls slept three to a room – V-14, V-15 and V-18 shared one room, and the other three girls shared an adjoining room. On the night of April 12, 2000, Hayward took the girls to a nightclub in London where they drank alcohol. The group returned to the hotel room in which the 16-year olds and the 17-year-old were

staying.[2] Hayward began to rub the back of one of the girls, slipping his hand inside her pants. Hayward stated to another girl: "Babe, I'm sleeping with you tonight." He then appeared to doze off. Both of the 16-year-olds and the 17-year old also fell asleep, at which point Hayward awoke and announced that he was going to sleep in the adjoining room shared by V-14, V-15 and V-18.

Once inside the adjoining room, Hayward directed V-14, V-15 and V-18 to push two of the three single beds together. V-14 and Hayward lay down on the beds, and V-18 jumped on Hayward and then rolled off to one side. V-15 then joined the others on the bed. At this point, V-14 and V-15 were lying to one side of Hayward, and V-18 was on his other side.

The precise order of events thereafter is unclear. Initially, Hayward pulled down V-15's shirt and fondled her breasts. V-15 testified: "He began to untie my shirt. It tied back here. It was just two strings. And he rolled me over, pulled my shirt down, and fondled me."

While he was fondling V-15, Hayward pulled V-14's face toward his and forced her to kiss him. The

significant testimony concerning the sequence of events that took place that evening was V-14's. She testified that Hayward pushed her head toward his penis. Some time later, he removed his trousers and placed V-14's and V-18's hands on his penis.

The three girls then went to the hotel lobby, and later returned to their room once Hayward had vacated it. The following day, V-14 reported the incident to a cheerleading judge affiliated with the World Cheerleading Association, who, in turn, alerted Scotland Yard.

Scotland Yard investigators took videotaped statements from V-14, V-15 and V-18, and performed tests on semen samples found on the clothing worn by V-14 and V-18 on the night in question. Hayward was questioned by Scotland Yard, and gave two recorded statements. Hayward also gave blood samples to investigators two days after the assaults occurred. The toxicology report evidenced no drugs or alcohol in his blood, although due to the lapse of time it was inconclusive as to Hayward's impairment at the time these events took place. DNA testing established that there was only one chance in a billion that a semen sample taken from the girls' clothing was not Hayward's semen.

When Hayward returned to the United States, he was charged and indicted in a two-count indictment by a grand jury in the Western District of

---

[2] Hayward claims he blacked out after returning to the hotel. The testimony which appears of record is therefore the testimony of the cheerleaders.

-3-

Pennsylvania. Count One charged Hayward with transporting two females under age 18 in interstate and foreign commerce with the intent to engage in illegal sexual activity, in violation of 18 U.S.C. § 2423(a).[3] Count Two charged Hayward with transporting a female in interstate and foreign commerce with the intent to engage in illegal sexual activity, in violation of 18 U.S.C. § 2421.[4] Hayward pled not guilty and testified that he had blacked out and remembered nothing after returning to the hotel.

The jury convicted Hayward of Count One, finding that he had violated § 2423(a) with respect to V-14 and V-15. Hayward was acquitted of Count

---

[3] 18 U.S.C. § 2423 provides in relevant part: Transportation of minors

(a) Transportation with intent to engage in criminal sexual activity – A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2246(2) defines "sexual act" as:

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

[4] 18 U.S.C. § 2421 provides: Transportation generally. Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

-4-

Two, which charged him with violating § 2421 (transporting for illegal sexual activity) with respect to V-18. The District Court Judge sentenced Hayward to 180 months in prison for attempted criminal *sexual abuse* pursuant to § 2A3.1 of the 2002 United States Sentencing Guidelines ("U.S.S.G."), rather than criminal *sexual contact* under § 2A3.4.[5] He also sentenced Hayward to a 3-year term of supervised release, and ordered him to make restitution to his victims and their parents in the amount of $12,289.78. Hayward filed a timely notice of appeal.

Hayward makes six claims on appeal: (1) the District Court improperly allowed expert testimony from behavioral scientist Kenneth Lanning pertaining to the general profile of an acquaintance molester; (2) the District Court at trial improperly allowed the prosecution to play Hayward's tape recorded statements to Scotland Yard investigators; (3) the District Court should have instructed the jury that criminal sexual activity had to be *"the* dominant" – rather than *"a* significant or motivating" – purpose of Hayward's trip to England; (4) Hayward should have been sentenced for criminal *sexual contact* under U.S.S.G. § 2A3.4, instead of for attempted criminal *sexual abuse*

under U.S.S.G. § 2A3.1; (5) the District Court failed to grant Hayward's request for a downward departure at sentencing because it did not understand that it had the authority to do so; and (6) the District Court should not have included the cheerleaders' parents as victims for restitution purposes.

As to Hayward's first, second and third claims, we find no error in the admission of the expert testimony and the tape recordings at trial or in the jury charge. We agree with Hayward on his fourth claim, and will reverse and remand the case for re-sentencing for criminal *sexual contact* pursuant to U.S.S.G. § 2A3.4. As a result, Hayward's fifth claim (downward departure) is moot. Finally, we reject Hayward's sixth claim (restitution), and will affirm the District Court's restitution order.

We have jurisdiction to hear this appeal pursuant to 18 U.S.C. § 1291.

**II.**

We briefly address Hayward's arguments that the District Court erred at trial in admitting certain evidence and in charging the jury. We hold his arguments to be meritless.

1.

The first of these claims is that the District Court improperly allowed expert testimony adduced from behavioral

---

[5] We have reproduced the text of U.S.S.G. §§ 2A3.1-2A3.4 in our analysis, infra. Accordingly, we do not include those Guidelines here.

scientist Kenneth Lanning ("Lanning") pertaining to the general profile of an acquaintance molester. The District Court Judge, in response to Hayward's pre-trial motion to bar Lanning's testimony,[6] limited Lanning's testimony to "acquaintance child molesters' pattern of activity," and prohibited Lanning from testifying as to Hayward himself or as to Hayward's intent.

After testifying as to his experience and credentials, Lanning was qualified by the District Court Judge as an expert in the field of behavioral science.[7] Lanning then testified about various types of child molesters, focusing primarily on "acquaintance" child molesters. Lanning described the patterns exhibited by many acquaintance child molesters, including selection of

victims from dysfunctional homes, formulation of a customized seduction process, lowering the victim's inhibitions about sex, isolating the victim, and soliciting the victim's cooperation in the victimization process.

Hayward argues that Lanning's testimony violated Rule 704(b) of the Federal Rules of Evidence, which prohibits expert witnesses from testifying with respect to the mental state of a defendant in a criminal case and from stating an opinion or inference as to whether the defendant had the mental state constituting an element of the crime charged. Hayward contends that Lanning's testimony effectively removed the determination of Hayward's intent from the jury, in violation of Rule 704(b).

We have held that under Rule 704(b) "expert testimony is admissible if it merely supports an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony." *United States v. Bennett,* 161 F.3d 171, 185 (3d Cir. 1998) (quoting *United States v. Morales,* 108 F.3d 1031, 1038 (9th Cir. 1997)) (internal quotations omitted).

---

[6] In its response to Hayward's motion *in limine* concerning Lanning's testimony, the Government stated that "Mr. Lanning is **not** going to answer hypothetical questions about Scott Hayward's intent . . . ."

[7] Lanning testified that he had been an FBI agent for 30 years, he had been a Supervisory Special Agent in the FBI's Behavioral Sciences Unit for 20 years, he was a founding member of the American Professional Society on the Abuse of Children, he was the author of a monograph entitled "Child Molesters and Behavioral Analysis," he held two masters degrees, and he had taught university courses in behavioral science.

Furthermore, in a Seventh Circuit case, in which Lanning qualified as an expert and in which he testified under circumstances similar to those in this case, Lanning's testimony was admitted and upheld against a Rule 704(b) attack identical to Hayward's attack here. *See United States v. Romero,* 189 F.3d 576 (7th Cir. 1999). In *Romero,* Lanning was only permitted to testify to "the methods and techniques employed by preferential child molesters. The prosecution would not ask Lanning to give his opinion about Romero or to comment about his intent or culpability." *Id.* at 582. On redirect examination, however, the

> prosecution posed a series of hypothetical actions to Lanning and asked him if these actions would indicate someone who would act on his sexual fantasies about children . . . [T]he hypotheticals described actions taken by Romero that had already been produced in evidence[.]

*Id.* at 584. The Seventh Circuit held that Lanning's responses did not violate Rule 704(b) because "[h]is testimony did not amount to a statement of his belief about what specifically was going through Romero's mind when he met [the victim]." *Id.* at 586.

In this case, Lanning's testimony elucidated the motives and practices of

an acquaintance molester. His testimony was admissible under Rule 704(b) because, as in *Romero,* Lanning "never directly opined as to [Hayward's] mental state when he [returned to the hotel room with the cheerleaders]." *Id.* at 586. Rather, Lanning "focused primarily on the modus operandi – on the actions normally taken by child molesters to find and seduce their victims." *Id.* He drew no conclusion as to Hayward's intent. Thus, his testimony is admissible under Rule 704(b).

We review a district court's decision to admit or exclude expert testimony for abuse of discretion. *United States v. Watson,* 260 F.3d 301, 306 (3d Cir. 2001); *Bennett,* 161 F.3d at 182. The District Court properly exercised its discretion in admitting Lanning's testimony.

2.

Hayward next argues that the tape recorded statements of Scotland Yard investigators questioning Hayward were improperly admitted and played for the jury, because they violated Federal Rule of Evidence 403.[8] Hayward claims on

_____

[8] Rule 403 allows the exclusion of otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or

-7-

appeal that the tapes, which contained Hayward's statements to Scotland Yard investigators, were prejudicial under Rule 403 because they allowed the investigators to testify without taking the stand or being subject to cross-examination. However, the record reveals that the Scotland Yard detectives who questioned Hayward on the tape were present in court and even testified on behalf of the Government at Hayward's trial.

The contents of the tapes were clearly probative of the facts surrounding the crime charged. Hayward's taped statements revealed his whereabouts on the night of April 12, 2000, his reason for being in London with the cheerleaders, and his custody of and control over the cheerleaders during the trip. The tapes contain no evidence as to Hayward's criminal sexual intent, as he maintained during the questioning that he had no memory of the event. The District Court did not abuse its discretion in admitting the tapes into evidence.

3.

Next, Hayward argues on appeal that the District Court should have instructed the jury that criminal sexual activity had to be *"the* dominant" – rather than *"a* significant or motivating" – purpose of the trip to England in order

needless presentation of cumulative evidence.

to convict Hayward. The District Court charged the jury:

> It is not necessary for the government to prove that the illegal sexual activity was the sole purpose for the transportation. A person may have several different purposes or motives for such travel, and each may prompt in varying degrees the act of making the journey. The government must prove beyond a reasonable doubt, however, *that a significant or motivating purpose of the travel across state or foreign boundaries was to have the individual transported engage in illegal sexual activity. In other words, the illegal sexual activity must have not been merely incidental to the trip.*

App. Vol. IV p. 893 at 16:7-16 (emphasis added).

At *trial,* Hayward argued that the jury should be instructed to find that the criminal sexual activity with which Hayward was charged was "*a* dominant purpose" of his trip to England. The District Court Judge instead charged the jury that the criminal sexual activity had to be "a significant or motivating purpose" of Hayward's trip to England.

On *appeal,* Hayward's argument has changed. He now argues that the District Court Judge should have used the words "*the* dominant purpose" in the jury charge. Hence, the charge that Hayward argues for on appeal is substantially different from the charge that Hayward requested at trial, raising a serious question as to whether this issue has been preserved. We do not rest our position on preservation, however.

Hayward points to no case in which any Court of Appeals required a jury instruction that criminal sexual activity must be *the* dominant purpose of interstate travel to support a conviction under 18 U.S.C. § 2423(a).[9] The Government relies on decisions by the First, Second, Fifth, Sixth, Seventh and Tenth Circuits, in which criminal sexual activity was one of a number of multiple motives for interstate travel. Those courts declined to reverse convictions where the respective district court had refused or failed to give *"the* dominant purpose" jury instruction that Hayward now requests. *See United States v. Garcia-Lopez,* 234 F.3d 217, 220 (5th Cir. 2000); *United States v. Vang,* 128 F.3d 1065, 1072 (7th Cir. 1997); *United States v. Meacham,* 115 F.3d 1488, 1495

(10th Cir. 1997); *United States v. Sirois,* 87 F.3d 34, 39 (2d Cir. 1996); *United States v. Campbell,* 49 F.3d 1079, 1082-83 (5th Cir. 1995); *United States v. Ellis,* 935 F.2d 385, 389-90 (1st Cir. 1991); *United States v. Snow,* 507 F.2d 22, 24 (7th Cir. 1974); *United States v. Harris,* 480 F.2d 601, 602 (6th Cir. 1973). Of these authorities, *United States v. Vang* was the case relied upon by the District Court Judge in Hayward's case.

In *Vang,* the defendants repeatedly raped underage girls during the course of an interstate car trip, and they were charged under the Mann Act and 18 U.S.C. § 2243(b). The District Court instructed the jury that the government need not prove "that a criminal sexual act was the sole purpose for a defendant traveling from one state to another, but the government must prove that it was *a* dominant purpose, as opposed to an incidental one," and denied the defendants' request to require a finding that a criminal sexual act was *the* dominant purpose of the trip. 128 F.3d at 1069 (italics added). The Seventh Circuit affirmed. Similarly in this case, the District Court's charge that "a significant or motivating purpose of the travel across state or foreign boundaries was to have the individual transported engage in illegal sexual activity. In other words, the illegal sexual activity must not have been merely incidental to the trip" was not in error.

---

[9] Hayward cites *United States v. Mortensen,* 322 U.S. 369 (1944), and *Hansen v. Haff,* 291 U.S. 559 (1934), in support of his position, but those cases, which do not involve multiple motives for interstate travel, are inapposite.

## III.

We now turn to Hayward's arguments concerning his criminal sentence.

### 1.

First, Hayward argues that the District Court Judge improperly sentenced him for attempted criminal *sexual abuse* of V-14 under U.S.S.G. § 2A3.1. Hayward claims that the evidence supports only a sentence under U.S.S.G. § 2A3.4 for criminal *sexual contact* with V-14.[10]

Hayward was convicted of violating 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity) based upon his actions with V-14 and V-15. The corresponding Guideline for a violation of § 2423(a) is U.S.S.G. § 2G1.1.[11] Under that Guideline, the

---

[10] A District Court's choice of sentencing guidelines is subject to plenary review. *United States v. Diaz,* 245 F.3d 294, 300 (3d Cir. 2001); *United States v. Smith,* 186 F.3d 290, 297 (3d Cir. 1999).

[11] § 2G1.1. Promoting A Commercial Sex Act or Prohibited Sexual Conduct
* * *
(c) Cross References:
 (1) If the offense involved causing, transporting,

permitting, or offering or seeking by notice or advertisement, a person less than 18 years of age to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply § 2G2.1 . . . .
 (2) If the offense involved criminal sexual abuse, attempted criminal sexual abuse, or assault with intent to commit criminal sexual abuse, apply § 2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse). If the offense involved criminal sexual abuse of a minor who had not attained the age of 12 years, § 2A3.1 shall apply, regardless of the 'consent' of the victim.
 (3) If the offense did not involve promoting a commercial sex act, and neither subsection (c)(1) nor (c)(2) is applicable, apply § 2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts) or § 2A3.4 (Abusive Sexual Contact or Attempt to Commit Abusive Sexual

-10-

sentencing judge may select among U.S.S.G. § 2A3.1 (Criminal Sexual Abuse), § 2A3.2 (Statutory Rape), or § 2A3.4 (Abusive Sexual Contact), as appropriate. The District Court Judge acknowledged this, and he also recognized that *sexual abuse* offenses are treated more seriously than are *sexual contact* offenses.

In selecting the sentencing guideline, the District Court Judge examined §§ 2A3.1, 2A3.2, and 2A3.4. As Hayward does not contest the District Court's determination that § 2A3.2 (statutory rape) was inapplicable, we will not address that section of the Guidelines here.

Section 2A3.1 applies when a defendant engages in or attempts to engage in criminal *sexual abuse,* which is defined as "knowingly engag[ing] in a sexual act with another person who (1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging[.]" 18 U.S.C. § 2243(a). As noted above, "sexual act" is defined as:

(A) contact between the penis and the vulva or the penis and the anus, and for

Contact), as appropriate.

purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246(2).

-11-

Section 2A3.4 applies when a defendant engages in or attempts to engage in abusive *sexual contact.* According to the Guidelines, "[t]his section covers abusive sexual contact not amounting to criminal *sexual abuse.*" U.S.S.G. § 2A3.4 cmt. *Sexual contact* here is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]" 18 U.S.C. § 2246(3).

The District Court Judge explored the distinction between § 2A3.1 and § 2A3.4, and observed that "if the defendant's criminal conduct amounted to sexual "contact" or attempted sexual "contact", as opposed to a sexual "act" or attempted sexual "act", this Guideline [§2A3.4] governs."[12]

_____

[12] The parties dispute the required standard of proof at sentencing. The Government argues that it must – and did – establish attempted criminal *sexual abuse* by a "preponderance of the evidence." Hayward, relying on *United States v. Kikumura,* 918 F.2d 1084 (3d Cir. 1990), argues that a "clear and convincing" standard of proof is required here, and the Government did not supply such proof. It is not necessary for us to determine which standard applies in this case. Under either standard, it is evident from the

The Presentence Investigation Report ("PSIR") recommended that Hayward be sentenced as to both V-14 and V-15 under § 2A3.4 for abusive sexual contact. PSIR pp. 7-8. The District Court Judge agreed that Hayward had committed *sexual contact* with V-15 when he touched her breasts. As to V-14, however, he determined that Hayward had committed an attempted *sexual abuse* by pushing her head toward his penis, thereby attempting to engage in oral sex with her. Hayward argued prior to the sentencing determination that he could not have taken the requisite substantial step toward oral sex with V-14 because, according to the trial testimony, he was clothed when he pushed her head down toward his penis. In response, the District Court Judge wrote:

> Although the Court agrees that it may be inferred from V-14's testimony that defendant's pants were still on when he tried to push her head toward his penis, the evidence nonetheless establishes by clear and convincing evidence that the defendant, in starting to push V-14's head toward his penis, was attempting to

_____

record that Hayward should have been sentenced for abusive *sexual contact,* and not for attempted criminal *sexual abuse.*

-12-

have her perform oral sex on him.

App. Vol. I p. 23.

Hayward correctly points out that the District Court Judge did not define what constitutes an attempt to commit a sexual act. The ambiguous and equivocal act of pushing a victim's head toward one's clothed penis does not meet any definition of a "sexual act" as defined in 18 U.S.C. § 2246(2) and does not constitute a substantial step toward achieving "contact between the mouth and the penis" under 18 U.S.C. § 2246(2)(B).

The term "contact" is the controlling term set forth in § 2246 for each of the "sexual acts" that are defined. In each section, the statute requires "contact between the penis and the vulva or the penis and the anus," § 2246(2)(A), and "contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus," § 2246(2)(B). "Contact" is defined as "a union or junction of body surfaces: a touching or meeting," Webster's Third New International Dictionary 490 (1st ed. 1966), and "the act or state of touching; a touching or meeting of two things," The Random House College Dictionary 289 (rev. ed. 1980).

Those definitions, and the use of the term "contact" in the relevant sections of the statute to which we have just referred, are plain and explicit: they require the actual touching, a meeting of body surfaces. *See United States v. Knox,* 977 F.2d 815, 818 (3d Cir 1992) ("It is axiomatic that when the statutory language is clear, the words must be interpreted in accordance with their ordinary meaning."). We therefore interpret the statutory definition of a "sexual act" under § 2246(2), which in this case speaks of contact between the penis and the mouth, to require direct skin-to-skin contact or touching of body parts.[13] In contrast to the term "sexual act," which requires skin-to-skin

---

[13] We are aware that other courts, which have sentenced defendants under 18 U.S.C. § 2422(b) (coercion and enticement), have interpreted an attempted "sexual act" pursuant to 18 U.S.C. § 2246(2) as apparently not requiring skin-to-skin contact. *See, e.g., United States v. Panfil,* 338 F.3d 1299 (11th Cir. 2003); *United States v. Miranda,* 348 F.3d 1322 (11th Cir. 2003); *United States v. Payne,* 77 Fed. Appx. 772 (6th Cir. 2003); *United States v. Bailey,* 228 F.3d 637 (6th Cir. 2000). We do not accept the analysis of those courts as they pertain to the evidence and violation in this case, particularly as those cases were decided in the context of internet "chat room" crimes. We express no opinion here as to what our interpretation of "sexual act" would be if we were confronted with a challenge to a sentence rendered after an internet "chat room" conviction pursuant to 18 U.S.C. § 2224(b).

-13-

touching and which led to the sentencing of Hayward for committing *sexual abuse,* the controlling term of 18 U.S.C. § 2246(3) is *"sexual contact,"* where the touching could occur either directly or through the clothing. Section 2246(3) refers explicitly to "the intentional touching, *either directly or through the clothing,*" of the victim. 18 U.S.C. § 2246(3) (emphasis added). In this case, therefore, where the evidence is that V-14's mouth could not have touched Hayward's penis because Hayward's trousers were between her mouth and his penis – he could only have been sentenced to *sexual contact,* and not *sexual abuse.*

The record here discloses no evidence that Hayward's penis was exposed when he pushed V-14's head down. V-14's testimony is clear – at the time the "pushing" occurred, Hayward was trousered. It was not until some time later that Hayward's trousers were removed. This evidence, and the record as a whole, does not show that Hayward's act in pushing V-14's head toward his clothed penis constituted an attempt to achieve direct skin-to-skin contact. V-14's trial testimony is reproduced in the margin,[14] and at the

very least is compelling evidence from which a fact-finder could only infer that he was clothed at that time.

As we review the record, the facts recited by V-14 support only a sentence for abusive *sexual contact* under U.S.S.G. § 2A3.4. Not surprisingly, this was also the Guideline originally suggested by the Probation Office for sentencing as to V-14. These facts

---

beds and [I] rolled in between the beds. . . . And he took one arm and he scooped me back up onto the bed. . . . Then he told [V-18] to go get the dresser and move it beside the bed so that the beds wouldn't be able to be pushed out. And she got up and started moving the dresser and he told her to get back on the bed, and she got back on the bed and I looked at her and her shirt was off. And then he took mine and [V-18]'s wrists again and this time his pants were off. And he put them on his penis and started moving up and down. And he took my shoulder and started moving it up and down, pushing up and down. Then he said faster, faster, faster. Then he ejaculated and appeared to fall asleep. . . .

---

[14] V-14 testified as follows: [Hayward] took the back of my head and started pushing my head toward his penis. And I kicked the bed out because they were rolling

-14-

satisfy the definition of *sexual contact* under 18 U.S.C. § 2246(3), thereby requiring us to remand to the District Court for re-sentencing under U.S.S.G. § 2A3.4.[15]

### 2.

Hayward's other challenge to his sentence is his claim that the District Court improperly considered the cheerleaders' parents to be victims for restitution purposes. Whether a parent is entitled to restitution is a question of law subject to plenary review. *United States v. Akande,* 200 F.3d 136, 138 (3d Cir. 1999).

Hayward argues that the parents of the cheerleaders should not be considered victims for restitution purposes. He urges that beyond the cost of counseling for their children, all other costs incurred by them should be excluded from the restitution order. The Government counters that under the Mandatory Victims Restitution Act

---

[15] The Government points out that the Probation Office later amended its recommendations based upon its original misapprehension of the age of the female whose head Hayward pushed down towards his clothed penis. We do not find this significant, as the age of the victim is not a factor in determining whether a defendant committed a *sexual assault* or *sexual contact.* Moreover, at oral argument the Government abandoned this argument.

("MVRA"), 18 U.S.C. § 3663A, any person directly and proximately harmed is entitled to restitution, and a parent may assume a child's restitution rights. In addition, the Government argues, parents are entitled under the MVRA to restitution for costs incurred during the investigation and prosecution of the action. *Id.* at § 3663A(b)(4).

The District Court correctly concluded that the cheerleaders' parents are entitled to restitution under the MVRA. They incurred reasonable costs in obtaining the return of their victimized children from London and in making their children available to participate in the investigation and trial. The restitution order will therefore be affirmed.

### IV.

In all respects other than the District Court's 15-year sentence of Hayward, which was rendered in error pursuant to 18 U.S.C. § 2423(a) and U.S.S.G. § 2A3.1, we will affirm the judgment of conviction and the sentence of restitution. With respect to the 15-year sentence of Hayward, we will reverse and remand for re-sentencing pursuant to the sexual contact provisions of 18 U.S.C. § 2423(a) and U.S.S.G. § 2A3.4.

Fuentes, Circuit Judge, concurring in part, dissenting in part:

I join the majority with respect to

Part I, II, III(2) and IV. However, the majority has determined that Scott Hayward's 15-year sentence for sexual abuse, specifically attempted oral sex with a minor, was rendered in error, and that Hayward must be resentenced under the more lenient sexual contact guideline. The difference will be a reduction of about 13 years and 23 levels.[16] The majority's view is, essentially, that Hayward could not have attempted sexual abuse because 18 U.S.C. § 2243(a) and U.S.S.G § 2A3.1 require actual contact, skin-to-skin, and since Hayward had his pants on when he pushed Julie's[17] head toward his penis, he could not have attempted oral sex. In my view, whether Hayward had his pants on

or not is of no consequence.[18] I believe that under a plain reading of 18 U.S.C. § 2246(2)(A) and (B), a person can commit an attempted sexual abuse not only where there has been no physical contact of any kind, but, as determined by a number of our sister circuits, even where the person never meets the intended victim. I disagree that the District Court applied the wrong guideline and therefore I respectfully dissent in regard to Part III(1).

Before discussing the statutory language, I think it is important to review the factual record. The sexual act here was no chance encounter. Hayward was convicted, by a jury and after an exhaustive trial, of transporting Julie and Kelly in interstate and foreign commerce with the intent to engage in illicit sexual activity, in violation of 18 U.S.C. §

[16]Under U.S.S.G. § 2A3.1, Hayward's base offense level was 27. His final adjusted offense level of 37 produces a sentencing range of 235 to 293 months. Because that range exceeds the statutory maximum of 15 years, he was sentenced by the District Court to 15 years imprisonment and a 3-year term of supervised release. Upon remand, Hayward will be sentenced under U.S.S.G § 2A3.4, with a base offense level of 10. His final adjusted offense level of 14, produces a guideline range of 18 to 24 months.

[17]I refer to the minor victims, identified as V-15 and V-18 in the majority opinion, by their first names, as is done in the parties' briefs.

[18]The girls' testimony is not clear or consistent on this point. There is some testimony in the record from which it may be inferred that his pants were in fact off. In testimony the court found fully credible, Tracy stated:
He undid his own pants and pulled out his penis. At that point I know Julie fell off the bed at one point, I am not sure whereabouts that was, and he pulled her back up onto the bed...and at one point I know he tried to push Julie's head down to his penis to give him oral sex. She pulled away.

2423(a). The evidence made clear that Hayward cultivated a sexualized relationship with the cheerleaders under his tutelage and intended all along to be alone with the minors while in London. He coined sexually explicit nicknames for some of the girls, such as "Doggie Style" and "Penis" and made a practice of discussing sex with them. One cheerleader testified, for example, that he recounted stories of how female cheerleaders often had sex with male recruits in order to curry favor with them. Although parent chaperones were often present on team trips, Hayward dissuaded parents from accompanying them to London, assuring them that his wife and another coach, Larry Guerrero, would provide sufficient supervision. He did not tell the parents that Guerrero and Mrs. Hayward would only be joining the group later. Once in London, the sexual innuendo became explicit. Hayward spent several late nights in the girls' rooms, playing drinking games, confiding in the girls about his sexual experiences and proclivities and inquiring into theirs. One game required the girls to "talk about what you've done, what you haven't done with someone, sexual positions, what you prefer," and Hayward told the girls his daughter had been conceived on top of an entertainment center in a hotel room. Hayward staged and judged an "abs and butt contest" between two of the girls, touching both girls' abs and butts to determine whose were tighter. According to testimony, he rewarded the winner by tossing her on the bed and

"humping her." Several girls testified that Hayward touched and caressed them throughout the trip, and on more than one occasion would take a girl's hand, shove it into his pocket and "say something like, oh, you're feeling my thing." On the night in question, Hayward encouraged Julie to wear make-up and a revealing outfit and to keep her braces covered to disguise her age, so that she could join the group for their second night of drinking at a nightclub.

That night, in bed with three of the girls, Hayward removed Kelly's shirt and fondled her, grabbed Julie's head and, "slamm[ing] [her] face into him," forced her to kiss him. He then grabbed Tracy's hand, put it on his leg and tried to force her to undo his pants. He grabbed the girls' hands and made them rub his genitals and then grabbed the back of Tracy's neck and "slammed her face into his, forcing her to kiss him." Julie testified that at this point Hayward "took the back of my head again and started pushing my head down toward his penis. And I kicked the bed out because they were rolling beds and rolled down in between the beds...absolutely terrified." She explained: "I thought that maybe I would be able to get out, and I was holding onto the bed and I just said don't touch me, just leave me here." After Hayward lifted her back onto the bed, Julie fell away a second time, and Hayward lifted her up again. Julie testified that she could not remember how many times during this period Hayward pushed her head toward his

penis. Finally, Hayward grabbed Tracy's and Julie's wrists, masturbating himself with their hands, saying "faster, faster, faster" until he ejaculated on them and appeared to fall asleep.

At trial, the jury heard the testimony of Kenneth Lanning, who described how acquaintance child molesters develop seduction strategies suited to their victims, gradually lowering their victims' inhibitions about sex so as to solicit their complicity in their own victimization. Hayward's plan for abusing his young victims was hatched long before his conduct in the bedroom and that conduct should therefore not be viewed in isolation.

My colleagues emphasize that "sexual act" as defined in § 2246 requires "*contact* between the mouth and the penis" and therefore there has to be "actual touching, a meeting of body surfaces." Thus, the majority concludes that the act of pushing Julie's head toward his "clothed" penis is not a substantial step taken towards commission of a sexual act. The majority's repeated emphasis on Hayward's state of undress is misplaced and misleading. I agree with my colleagues that a "sexual act" can only be accomplished by direct skin-to-skin contact and therefore clearly requires exposed skin. However, it has never been alleged that Hayward *successfully* perpetrated a "sexual act" on his young victim. Rather, the District Court sentenced him under § 2A3.1 for an

*attempted* sexual act. The law of attempt is well-settled. An attempt is comprised of two principal elements: (1) an intent to engage in criminal conduct and (2) a substantial step toward the commission of the substantive offense which corroborates that intent. See United States v. Cruz-Jimenez, 977 F.2d 95, 101-02 (3d Cir. 1992). A "substantial step" has been defined as something more than mere preparation and less than the last act necessary before commission. U.S. v. Ledesma-Cuesta, 347 F.3d 527, 531 (3rd Cir. 2003), citing United States v. Yousef, 327 F.3d 56, 134 (2d Cir. 2003), accord United States v. Manley, 632 F.2d 978, 987 (2d Cir. 1980). It requires "some appreciable fragment of the crime in progress." United States v. Hadley, 918 F.2d 848, 853 (9th Cir. 1990) (internal quotations and citations omitted).

Hayward's conduct here unquestionably satisfies that definition. Hayward was engaging in "mere preparation" when he took the girls to London on an unchaperoned trip, brought them to a nightclub where they became intoxicated, talked to them in increasingly explicit terms about sex and climbed into bed with them. Had he then just kissed and fondled the girls, undressed, and forced them to touch him, those acts alone would not have established his desire to have Julie perform oral sex on him. However, the District Court found, in an exhaustive, fifty-page sentencing memorandum, that Hayward went beyond that "preparation"

and took a substantial step toward oral sex, making his desires plain, when, after trying to force Tracy to undress him, he grabbed Julie's head and pushed it down toward his penis. When Hayward's attempts were met with Julie's resistance, he persisted, ignoring her protestations, dragging her back onto the bed by one arm and pushing her head down again. Thwarted, Hayward resigned himself to sexual gratification by other means.

My colleagues' view, that Hayward's pushing Julie's head toward his penis did not constitute a substantial step toward achieving "contact between the mouth and the penis" is untenable. Even assuming he was still dressed at this point, the only thing standing in the way of successful completion of a sexual act was a layer of fabric; the only step remaining was for Hayward to unzip his fly with his free hand, or coax Tracy or Julie to do it for him, as he had tried to earlier in the encounter. Hayward did not commit this last act necessary to complete the offense, perhaps because his use of force was met with Julie's resistance. Of course, if he had succeeded, he would have *committed* sexual abuse, not attempted it. In my view, the majority essentially writes attempt out of the statute, requiring not only a substantial step towards the commission of the offense, but practically all the steps necessary. In other words, the majority requires that the path be clear of obstacles, and that skin-to-skin contact be imminent and certain.

The relevant cases from our sister circuits clearly dictate the application of the sexual abuse guideline in this case. In some of these cases, the sexual abuse guideline applied even when the victim and her would-be abuser never met. In United States v. Payne, the Sixth Circuit held that the mere act of arriving for an arranged meeting with a 14-year-old girl constituted a "substantial step" sufficient to find an attempted sexual act when the defendant had been engaging in explicit e-mail conversations with his future victim, and sentenced the defendant under U.S.S.G. § 2A3.1.[19] 77 Fed. Appx. 772, (6th Cir. 2003). In United States v. Miranda, after an explicit online chat with "claudia13x" in which having sex was discussed and a meeting time and place was established, Miranda was arrested when he stopped his car in front of claudia13x's school and asked an undercover agent the name of the school. The Eleventh Circuit reversed with instructions to apply the sexual abuse, rather than the sexual contact, guideline because it was clear from the evidence that Miranda intended to engage in a sexual act with the minor. 348 F.3d 1322, 1326-29 (11th Cir. 2003). See

---

[19] Although it is not relevant to the holding of either case, it is worth noting that the "victims" in Payne, Miranda and Panfil were entirely fictional. The defendants were actually communicating with FBI agents posing as young girls, and their meetings were with undercover agents.

-19-

also, United States v. Panfil, 338 F.3d 1299 (11th Cir. 2003) (upholding a sentence under U.S.S.G. 2A3.1 for a defendant who was arrested when he went to meet his intended victim whom he had met on the internet).

In United States v. Cryar, the Tenth Circuit upheld Cryar's conviction and sentencing under U.S.S.G. §2A3.1 when, after discussing his attraction to young girls with a business associate and expressing a desire to babysit that associate's six-year-old sister-in-law, Cryar arrived at the Oklahoma zoo to pick up the young girl. 232 F.3d 1318 (10th Cir. 2000). See also United States v. Butler 92 F.3d 960 (9th Cir. 1996) (applying guideline for attempted sexual abuse when defendant was arrested entering the room where he believed children with whom he wanted to have sex were waiting); United States v. Hadley, 918 F.2d 848 (9th Cir. 1990) (holding there was sufficient evidence to support a finding of attempted sexual abuse where defendant and victim remained clothed, because evidence made clear that defendant intended to engage in a sexual act with the victim.)

These cases make it clear that a defendant may be guilty of attempt even where significant steps necessary to carry out the substantive crime intended are not completed. See also United States v. Jackson, 560 F.2d 112, 120 (2d Cir.1977). If an attempted sexual abuse can be perpetrated when defendant and victim are not about to have skin-to-skin

contact or are not even in the same room, as the Sixth, Ninth, Tenth and Eleventh Circuits have determined, it is clear that whether Hayward had his pants on or off is of no moment. The proper focus should be on the aggressor's intent, not on how close, temporally or spatially, the aggressor comes to achieving skin-to-skin, mouth to penis contact. In other words, we should focus on criminal design, not possibility of performance. Here, Hayward's intent was clear. He wanted to have Julie perform oral sex on him, and, in pushing her head toward his penis, he committed a substantial step in furtherance of that criminal design. Cruz-Jimenez, 977 F.2d at 102. The majority's implication that Hayward's intent could not be inferred from his actions because he was "trousered" is unsupportable. In the course of a premeditated and carefully orchestrated sexual encounter with three young girls in his care, with sexual desire evident and the ultimate goal of sexual gratification clearly in mind, Hayward forcefully pushed Julie's head toward his penis. It is certainly reasonable to infer, as Tracy did, that Hayward intended for Julie "to give him oral sex" and that he would have completed the attempt by unzipping his pants, had Julie not kicked and pulled away. To me, Hayward's conduct clearly constitutes attempted sexual abuse.

After engaging in a lengthy sentencing process, hearing the girls' testimony at sentencing, meticulously reviewing the facts with a clear

-20-

understanding of the guideline requirements, and giving due consideration to Hayward's protestations that his pants were still on, the District Court found that "the evidence nonetheless establishes by clear and convincing evidence that, in starting to push Julie's head toward his penis, Hayward was attempting to have her perform oral sex on him." Accepting that court's factual findings, as we must, I believe that the District Court correctly found that the record supports a sentence for attempted criminal sexual abuse under U.S.S.G. § 2A3.1.

For these reasons I would affirm the District Court's decision in its entirety.